Gerald Eugene STANO,
Petitioner–Appellant,

v.

Richard L. DUGGER, Robert A. Butter-
worth, Respondents–Appellees.

No. 87–3588.

United States Court of Appeals,
Eleventh Circuit.

Aug. 22, 1989.
Order on Grant of Rehearing
Oct. 31, 1989.

Mark Evan Olive, Atlanta, Ga., for petitioner-appellant.

Robert A. Butterworth, Atty. Gen., Margene A. Roper, Asst. Atty. Gen., Daytona Beach, Fla., for respondents-appellees.

Before FAY, ANDERSON and EDMONDSON, Circuit Judges.

FAY, Circuit Judge.

Gerald Eugene Stano appeals the district court's denial of his petition for writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 (1982). Stano asserts fourteen errors claiming violations of his rights under the fifth, sixth, eighth and fourteenth amendments to the United States Constitution. Among the violations, Stano claims a denial of his right to state-held exculpatory evidence concerning both the guilt/innocence and sentencing phases of his trial, to present fully evidence necessary for his defense, to a reliable and unbiased jury recommendation regarding the death sentence, to effective assistance of counsel, to confront the witnesses against him, and to a fair and impartial trial. We find no violation of Stano's constitutional rights as asserted in these claims and therefore affirm the district court's order denying habeas relief.

I. BACKGROUND

In 1981 Gerald Stano confessed to killing a young woman in 1974, and a grand jury indicted him for first-degree murder. Stano was twice tried for the murder of Cathy Scharf in Brevard County Circuit Court. The first trial in September, 1983 ended in a mistrial after the jury failed to reach a unanimous verdict. The jury in the second trial returned a guilty verdict on December 2, 1983 and recommended the death sentence. Stano appealed the conviction and sentence to the Florida Supreme Court, which affirmed.[1] *Stano v. State,* 473 So.2d 1282 (Fla.1985). The United States Supreme Court denied certiorari on January 21, 1986. *Stano v. Florida,* 474 U.S. 1093, 106 S.Ct. 869, 88 L.Ed.2d 907 (1986).

Stano's application for executive clemency was denied on May 22, 1986. His execution was scheduled for July 2, 1986 at 7:00 a.m. Stano then filed a postconviction relief motion on July 1, 1986, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, which the state circuit court denied.[2] The Florida Supreme Court grant-

---

1. On appeal to the Florida Supreme Court, Stano alleged numerous errors in the state court trial proceedings. Among them, Stano claimed that the trial court improperly: 1) limited the scope of his voir dire; 2) restricted his presentation of evidence at both the guilt/innocence and penalty phases of the trial; 3) declared the victim's parents unavailable to testify and allowed their former testimony into evidence; 4) permitted the court deputy clerk to testify which violated the court's appearance of impartiality; 5) allowed the state's expert to testify to an ultimate fact beyond his expertise which denied Stano a fair trial; 6) denied Stano's motion for judgment of acquittal for the state's failure to establish the corpus delicti; 7) conducted por-

tions of Stano's trial outside his presence; 8) permitted the state's cross-examination and argument regarding Stano's decision to appeal his previous convictions; 9) allowed specific evidence about Stano's prior murder convictions as aggravating factors in sentencing; and 10) failed to find numerous statutory and nonstatutory mitigating circumstances. The Florida Supreme Court denied relief on all grounds. *Stano v. State,* 473 So.2d at 1289.

2. In his Rule 3.850 motion, Stano raised the following six points: 1) The confessions which led to the prior guilty pleas, introduced as aggravating evidence at the trial which ultimately

ed an initial stay of execution pending review of the state circuit court's order, but ultimately affirmed the denial of relief on October 16, 1986 finding no error in the trial court's determination that an evidentiary hearing was not required. *Stano v. Florida,* 497 So.2d 1185 (Fla.1986). The United States Supreme Court refused certiorari on May 18, 1987. *Stano v. Florida,* 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). On June 4, 1987, the Governor signed Stano's second death warrant for the murder of Cathy Scharf. Stano was then rescheduled for execution. On July 6, 1987, the Florida Supreme Court denied Stano's motion for a five day extension of time to file a petition for writ of habeas corpus. Stano filed no further collateral motions for relief in the state courts.

On August 22, 1987, Stano filed a petition for writ of habeas corpus with the United States District Court for the Middle District of Florida. Of the numerous grounds claimed in the petition, the district court concluded that only the ineffective assistance of counsel claim merited evidentiary development. After a limited evidentiary hearing, the district court denied habeas relief. Stano appealed the district court's ruling to this court alleging multiple violations of his constitutional rights. We now review each of these claims in turn.

## II. ANALYSIS

### A. *BRADY* CLAIM

Stano argues that the district court erred in refusing to hold an evidentiary hearing on his claim that the prosecution suppressed material exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Stano asserts that the state violated his

constitutional right to due process by suppressing evidence showing that: 1) A police detective, J.W. Gadberry, believed that Stano had falsely confessed to and was not responsible for a prior murder for which Stano had been convicted[3]; 2) The state colluded with defense counsel in obtaining confessions from Stano; 3) A defense counsel psychologist instructed the detectives on psychological methods of extracting confessions from Stano; 4) The detectives coerced Stano into confessing by promising him escape from the electric chair, life imprisonment, and hospitalization; and 5) Other courts had rejected Stano's various prior confessions as unreliable. The district court, agreeing with the Florida Supreme Court, found that the petitioner's allegations were of nothing more than unfounded improprieties and, at most, inadmissible evidence. *See Stano,* 497 So.2d at 1186–87. The court held that no credible or reliable record evidence supported the allegations. Additionally, the court stated that the allegations did not constitute evidence so favorable to the defense that its suppression deprived the petitioner of a fair trial. We agree.

In certain circumstances, the district court is mandated to conduct an evidentiary hearing in a habeas proceeding. Where the facts are in dispute, a federal habeas court must grant an evidentiary hearing "if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963); *Agan v. Dugger,* 835 F.2d 1337, 1338 (11th Cir. 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2846, 101 L.Ed.2d 884 (1988). However, an evidentiary hearing is not required unless

resulted in Stano's death sentence, were coerced; 2) The state improperly withheld exculpatory evidence from Stano's trial counsel; 3) Trial counsel was ineffective for failing to adequately cross-examine a state witness; 4) Trial counsel was ineffective for failing to object to the state's cross-examination of Stano in the sentencing proceeding; 5) The testimony of two psychiatrists for the state at sentencing regarding the statutory mitigating circumstances was improper; and 6) The defense's expert, who

made a psychological study of Stano, was incompetent.

3. The prior murder occurred in February, 1980. *Stano confessed to the homicide in April of that year. He later pled guilty and was convicted of first degree murder for the offense. Detective Gadberry disagreed with several of his peers regarding Stano's involvement in the murder.*

the petitioner alleges facts which, if proved, would entitle him to federal habeas relief. *Townsend*, 372 U.S. at 312, 83 S.Ct. at 756–57; *Porter v. Wainwright*, 805 F.2d 930, 933 (11th Cir.1986), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Thus, assuming Stano's allegations to be true, he must state a valid claim for relief under *Brady*.

■ *Brady* holds "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97. To establish a due process violation under *Brady*, the petitioner must show that: 1) The prosecution suppressed evidence; 2) The evidence suppressed was favorable to the defendant or exculpatory; and 3) The evidence suppressed was material to the issues at trial. *United States v. Burroughs*, 830 F.2d 1574, 1577–78 (11th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1243, 99 L.Ed.2d 442 (1988); *United States v. Stewart*, 820 F.2d 370, 374 (11th Cir. 1987). The Supreme Court in *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), defined the standard of materiality required to show a *Brady* violation. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3384; *Burroughs*, 830 F.2d at 1578.

### 1. Alleged Governmental Suppression of Evidence

■ Stano alleges that the state improperly withheld evidence that a police detective believed Stano falsely confessed to a prior murder for which he was convicted; that a conspiracy existed to obtain Stano's confessions; that Stano was a pathological liar; and that Stano's prior confessions were coerced. To analyze whether the prosecution improperly suppressed evidence, factors such as the prosecutor's duty to search out and disclose certain evidence, as well as the availability of the evidence to the defense, must be considered. "A prosecutor is not constitutionally obligated to obtain information *dehors* his files for the purpose of discovering information which defense counsel can use...." *Morgan v. Salamack*, 735 F.2d 354, 358 (2d Cir.1984). Moreover, relief is not warranted whenever a combing of the prosecutor's files after trial reveals evidence possibly useful to the defense but unlikely to have changed the verdict. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). The Supreme Court has held that the prosecution is not constitutionally required to "make a complete and detailed accounting to the defense of all police investigatory work on a case." *United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) (quoting *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972)). In addition, the state has no obligation "to communicate preliminary, challenged, or speculative information." *Agurs*, 427 U.S. at 109 n. 16, 96 S.Ct. at 2400 n. 16 (quoting *Giles v. Maryland*, 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737 (1967) (Fortas, J. concurring)).

■ Detective Gadberry's difference of opinion with other detectives, his superiors, and the state attorney regarding Stano's responsibility for a prior murder, is not the type of evidence that a prosecuting attorney is constitutionally required to communicate to the defense. Such preliminary police investigatory work, which stands challenged by other members of the department and which is speculative at best, need not be revealed. This evidence was equally available to the defense, as well as to the prosecution, since Detective Gadberry made no secret of his opinion among his peers. *See* Appendix 16, p. 6. Thus, the prosecution did not suppress this evidence.

■ Stano's other allegations of suppression fail to satisfy this prong of *Brady* for the same reason. Allegations of a conspiracy to obtain confessions and of coer-

cion in *other* cases do not constitute the type of evidence the state must investigate and disclose, particularly where the prior confessions and pleas resulted in valid, final convictions. The state owes no duty to the defense to explore and undermine the validity of prior final convictions. The prosecutor may rely on the petitioner's guilty pleas in other cases, which result in convictions subject to independent appellate review, as waiving most non-jurisdictional challenges to the convictions' constitutionality. *See McCoy v. Wainwright,* 804 F.2d 1196, 1198 (11th Cir.1986). Although a challenge to the voluntary and knowing nature of a guilty plea may be raised on direct appeal or collateral attack of *that* conviction *id.,* the validity of a guilty plea in one case may rarely be challenged in the collateral attack of another. Regarding the remaining allegations, the record reflects that the defense was in possession of evidence prior to trial that other jurisdictions considered Stano's confessions unreliable and declined to prosecute based on them, and that Stano was a pathological liar.[4] Consequently, since the defense was either not constitutionally entitled to the evidence or it had equal access to the material, Stano's allegations fail to establish a *Brady* violation under the first step of inquiry; that the state suppressed evidence.

## 2. Evidence Favorable to the Petitioner

■ Assuming however, that the state did indeed suppress some evidence, the second prong of the *Brady* analysis requires that the evidence be favorable to the petitioner. From our consideration of the record, we agree with the district court that the alleged exculpatory evidence is not evidence favorable to the accused. To be favorable here, the evidence first must be admissible and subject to consideration by the trier of fact. In this case, Detective Gadberry allegedly would have testified regarding his reservations about Stano's guilt in another case. Detective Gadberry's proposed statement regarding a wholly separate murder for which Stano has been convicted, like Detective Kappel's proffered testimony concerning other cases, would not be admissible at any stage of this homicide proceeding. *See* Argument B, *infra.* The detective's differing opinion about a case not at issue here is irrelevant and speculative as to the determination of Stano's guilt or sentence in the Scharf murder. The same reasoning applies to the evidence dealing with the actions of other jurisdictions. The refusals by other jurisdictions to prosecute Stano in no way creates an inference that this case was erroneously prosecuted or that Stano's Scharf confession is unreliable. Thus, such inadmissible evidence can hardly be deemed exculpatory.

Similarly, Stano's allegations that his prior confessions were coerced and the result of a conspiracy involving collusion of the state and defense counsel establish no basis for relief. If we accept Stano's allegations as true, the fact that coercive techniques were used in previous cases to elicit confessions does not create an inference that the same coercion was applied in this case. The evidence would be inadmissible in considering Stano's guilt or sentence for the Scharf murder. We cannot draw the conclusion that coercion exists here, especially when the record reflects that Stano's confessions regarding Scharf were made voluntarily and knowingly. *See* Trial Transcript, Advanced Appendix Vol. 3, A, p. 867–68, 969–71, 979. Because this evidence would not establish such an inference, and indeed would not even be a proper consideration for the factfinder, it is not exculpato-

---

**4.** The defense sought to admit evidence on the issue of Stano's false confessions through the testimony of Detective James S. Kappel from the St. Petersburg Police Department. Detective Kappel's proffered testimony, which the trial court found inadmissible as irrelevant and nonprobative, dealt with various cases in which Stano had confessed to murders which the jurisdiction declined to prosecute. *See* Advanced Appendix Vol. 13, O, p. 1796–1818. Additionally, the defense possessed the report of a psychologist, Dr. Ann McMillan, in which she concluded that Stano exhibited serious pathological behavior, including lying. *See* Advanced Appendix Vol. 7, G, p. 92. Two psychiatrists corroborated this conclusion at Stano's sentencing hearing. *See* Advanced Appendix Vol. 4, B, p. 1216, 1247, 1249.

ry. The requested evidence simply is not *Brady* material.

We stress that procedurally, the collateral attack in this case of Stano's prior confessions and guilty pleas is improper. The proper forum for presenting the issues exists in the courts where *those cases* can be directly or collaterally challenged, not in a habeas proceeding for a separate case. A need for finality and certainty exists regarding the convictions and judgments of the courts. According to the United States Supreme Court, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *United v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (footnote omitted). The petitioner seeks to place a burden on this court which would disrupt the finality of prior judgments. Were this allowed, the parties and the courts would be subject to the risk of inconsistent results and interminable litigation. We decline to permit such a result.

### 3. Materiality

■ The final prong under *Brady* requires a showing that a reasonable probability exists that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Were Stano able to satisfy the first two prongs of the analysis, his allegations would fail under this inquiry.

Our review of the record indicates that even if the evidence had been admissible, and the defense had used Detective Gadberry's statement, the outcome of the case nevertheless would not have changed. Gadberry's statement refers to his involvement with Stano not on the Scharf murder, but on a wholly separate case. He was not even present during segments of the Stano interrogation regarding the prior homicide. *See* Appendix, 16 p. 2. Contrary to Gadberry's assertion that another detective's psychological influence pressured Stano into confessing, Stano confessed numerous times to multiple homicides independent of this detective's influence, including confessing at his own sentencing proceeding in

this case. *See* Advanced Appendix Vol. 4, B, p. 1825–26. Moreover, the record discloses that Stano's detailed confessions rebut Gadberry's opinion that Stano was vague in describing the murder. Thus, the record clearly refutes Gadberry's evaluation of Stano.

As for the remaining allegations of coercion and conspiracy, the record indicates that Stano's confessions were freely and voluntarily given. The petitioner alleges no concrete instances of coercion in the obtaining of the Scharf confessions, but only a long history of a psychologically pressured relationship between Stano and various detectives and defense team members in unrelated cases. The speculative nature of these assertions does not meet the requisite level of materiality under *Brady* and *Bagley*, especially when the record contains several instances of reliable Scharf confessions, including Clarence Zacke's testimony that Stano confessed to him in prison. *See* Trial Transcript, Advanced Appendix Vol. 3, A, pp. 893–96.

Neither would the outcome of the case likely have changed had the defense utilized the alleged exculpatory evidence at sentencing. Had the defense attacked the conviction to which Detective Gadberry's statement related, several other prior convictions remained, and Stano himself *reconfessed to eight murders* while on the stand at his sentencing hearing. *See* Advanced Appendix Vol. 4, B, p. 1829. Stano therefore, has failed to state allegations sufficient to set out a constitutional violation under *Brady*. The prosecution did not improperly suppress evidence favorable to the petitioner which would have materially altered the outcome of the case. No due process claim is cognizable under *Brady* which would entitle Stano to an evidentiary hearing. Thus, the district court properly denied the petitioner's request for relief.

### B. RESTRICTION OF EVIDENCE CLAIM

■ Stano claims that the trial court erred in restricting his presentation of evidence at both the guilt/innocence and sentencing phases of trial. He seeks reversal

of his conviction, or at a minimum, reversal of his death sentence. Stano argues that the evidence that he falsely confessed to other murders which he did not commit, and the testimony of a psychiatrist that mentally ill people often confess to crimes which they do not commit and that Stano may be such a person, was exculpatory and should have been admitted by the trial court. Stano asserts that his sixth, eighth and fourteenth amendment rights to establish a defense and prove the unreliability of his own confessions were violated by the trial court's exclusionary ruling, and thus, his conviction should be reversed. The district court denied habeas relief on this ground and found that the evidence was both irrelevant and speculative regarding the murder of Cathy Scharf. We agree.

■■ As the district court noted, for this claim to be cognizable the trial court's evidentiary ruling must have deprived the habeas petitioner of fundamental fairness. *Osborne v. Wainwright,* 720 F.2d 1237, 1238–39 (11th Cir.1983). Generally, "a federal court in a habeas corpus case will not review the trial court's actions in the admission of evidence." *Nettles v. Wainwright,* 677 F.2d 410, 414 (5th Cir. Unit B 1982) (citations omitted). However, when a constitutional question is presented, the federal court will inquire into the nature of the evidentiary ruling to determine whether the alleged error denied the petitioner a fundamentally fair criminal trial. *Id.* at 414–15; *Shaw v. Boney,* 695 F.2d 528, 530 (11th Cir.1983).

■■ The disputed evidence must be material, and rise to the level "of a crucial, critical, highly significant factor." *Smith v. Wainwright,* 741 F.2d 1248, 1258 (11th Cir.1984), *cert. denied,* 470 U.S. 1087, 105 S.Ct. 1853, 85 L.Ed.2d 150 (1985) (quoting *Jameson v. Wainwright,* 719 F.2d 1125, 1127 (11th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2355, 80 L.Ed.2d 827 (1984)). Unless the evidence is critical or significant enough to have denied the petitioner a fair trial, he is not entitled to relief. For example, in *Smith,* the defendant was tried for first degree murder. During the course of the proceedings, the trial judge admitted testimony regarding the facts of a second murder for which the defendant was charged, but not on trial. The defendant objected to the admission of the narrative regarding the second murder and claimed that the evidence was inflammatory, prejudicial and inadmissible. On appeal from the denial of habeas relief, this court upheld the trial court's evidentiary ruling admitting the testimony and found that the petitioner failed to establish a violation of fundamental fairness. *Smith,* 741 F.2d at 1258. Although we recognized that the admissibility of such evidence presented a close state law question, under the materiality test, evidence concerning the second murder did not violate the petitioner's constitutional rights. *Id.* Likewise, Stano's challenge to the trial court's evidentiary ruling merits no habeas relief in this appeal. The defense asserts that its theory of the case was to establish Stano as a liar, not a murderer. Stano argues that the trial judge excluded evidence material to this defense at the guilt/innocence phase of the trial, and material to mitigation at sentencing. The analysis in this case concerning an exclusionary ruling as compared with that in the *Smith* case dealing with an admissibility ruling remains the same; whether the disputed evidence was material and deprived the petitioner of fundamental fairness.

The trial court here correctly ruled that the evidence was not probative, was irrelevant and was inadmissible at the guilt/innocence phase since it did not indicate that Stano's confession in the Scharf case was false or tainted. Evidence that Stano falsely confessed to *other* murders he did not commit or for which he was not charged does not reflect that his confession regarding the murder of Cathy Scharf was also false. The petitioner's reliance on the cases cited in his brief is misplaced. Those cases deal with a defendant's right to compel presentation of relevant, material, reliable, and critical testimony; not irrelevant, speculative and conjectural testimony as here. *See Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (eyewitness testimony); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35

L.Ed.2d 297 (1973) (critical evidence bearing substantial assurances of trustworthiness regarding another individual's confessions *to the same crime for which the defendant is on trial*); *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (evidence regarding the circumstances under which the confession *at issue* was secured).

Moreover, the proffered testimony of Dr. Stern, a psychiatrist, that people often confess to crimes which they did not commit constitutes mere speculation in connection with Gerald Stano.[5] Since the evidence was neither relevant nor probative regarding Stano's guilt or innocence for the murder of Cathy Scharf, it did not rise to the level of a "crucial, critical, highly significant factor" constitutionally necessitating its admission under a fundamental fairness inquiry. Consequently, its exclusion did not deny Stano a fair trial.

■ The defense also argues that Stano was prohibited from presenting the evidence in mitigation at the sentencing phase of his trial due to the trial court's exclusionary ruling. We note that a defendant must be permitted to introduce any mitigating evidence at sentencing in a capital case if the evidence relates to the defendant's character, record or the circumstances of his offense. *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). However, a trial judge still retains the discre-

tion to exclude irrelevant, nonprobative evidence. *Lockett, Id.* at 604 n. 12, 98 S.Ct. at 2965 n. 12; Fla.Stat. § 921.141(1) (1985). Conjectural evidence, such as that sought to be introduced by Stano, should not play any role in the capital jury's sentencing determination. *See California v. Brown*, 479 U.S. 538, 542, 107 S.Ct. 837, 840, 93 L.Ed.2d 934 (1987). We conclude that the trial judge acted within his discretion in finding the evidence irrelevant and in precluding its introduction at sentencing. No adverse constitutional implications arose from the exclusion of the evidence.[6] Therefore, we affirm the district court's denial of habeas relief on this claim.

## C. *CALDWELL* CLAIM

■ In this claim, Stano alleges that the prosecution misinformed the jury of its sentencing responsibility in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The defense asserts that the prosecution improperly elicited testimony by the petitioner on cross-examination at sentencing, that Stano planned to attack all his prior convictions and sentences on grounds of ineffectiveness of counsel. *See* Advanced Appendix Vol. 4, B, p. 1836–37. Additionally, the prosecutor argued during closing argument that the jury needed to return one appeal-proof death penalty since it was likely that the petitioner's prior two death sentences would be reversed. *Id.* at 1279. Stano claims that he was deprived of a fundamentally fair sentencing proceeding as required by the eighth amendment, and therefore a new sentencing proceeding is necessary.

---

5. In fact, when asked whether Gerald Stano is the kind of person that would confess to something he had not done, Dr. Stern replied that "[h]e could be, I don't know if he is, but he could be." *See* Advanced Appendix Vol. 13, O, p. 1786. Additionally, Dr. Stern would not state an opinion as to whether Stano had the capacity to confess falsely in this case. He stated: "I could not testify on this case in particular, because I don't know anything about this case." *Id.* at 1793. Dr. Stern continued that he had no knowledge, "[n]one whatsoever," of the facts and circumstances of the Scharf case. *Id.* Thus, the psychiatrist could not testify specifically regarding Stano and the Scharf confession.

6. Even if we were to hold that the trial court improperly excluded the evidence at sentencing,

such action would not violate Stano's right to a fundamentally fair sentencing proceeding. Our review of the record indicates that such an error would not be of the "magnitude as to deny fundamental fairness to the criminal trial." *Nettles*, 677 F.2d at 414–15 (quoting *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.1976), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124). In any event, evidence that Stano possessed a propensity to lie was introduced at sentencing through the report of a psychologist, Dr. Ann McMillan. *See* Advanced Appendix Vol. 7, G, p. 92. Thus, this facet of the defense was ultimately presented to the jury for consideration in mitigation.

The district court found this claim meritless and held that the prosecutor's comments did not diminish the jury's sense of responsibility. We affirm.

*Caldwell* states "that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328–29, 105 S.Ct. at 2639. In *Caldwell*, the prosecutor told the jury that its decision was not final, but that it was reviewable. *Id.* at 325, 105 S.Ct. at 2637–38. The state told the jury that its decision was *automatically* subject to review in an effort to minimize its sense of the importance of its role.[7] *Id.* The Supreme Court found that the comments deprived the defendant of a sentencing determination which rested on the jury's awareness of its awesome responsibility. *Id.* at 341, 105 S.Ct. at 2646.

As the district court determined, *Caldwell* is inapplicable to the facts of this case. The state at sentencing attempted to show that Stano's confessions were motivated by a strong desire to avoid the death penalty rather than a need to gain psychiatric help. The prosecution's strategy was to rebut the defense's claim that the death penalty would be meaningless and cumulative since Stano had already received two other death sentences. Moreover, the state wished to show that Stano continued to kill despite psychiatric treatment.

The United States Supreme Court set out the standard regarding improper prosecutorial comment in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Inquiry must be centered on "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181, 106 S.Ct. at 2472 (citation omitted). This court re-

viewed *Caldwell* in light of Florida's statutory sentencing scheme in *Adams v. Wainwright*, 804 F.2d 1526 (11th Cir.1986), *modified on reh'g on other grounds*, 816 F.2d 1493 (11th Cir.1987), *cert. granted, Dugger v. Adams*, — U.S. ——, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988). In *Adams*, we held that a trial judge's repeated instruction that the court was not bound by the jury's recommendation, that no responsibility for the defendant's death rested upon the jury's shoulders, and that the jury was merely an advisory group whose recommendation the court could readily reject created an impermissible likelihood that the sentence imposed was unreliable. *Id.* at 1528–29.

Similarly, in *Mann v. Dugger*, 844 F.2d 1446 (11th Cir.1988) (en banc) we held that the prosecutor and trial court misled the jury as to its critical role in sentencing, and minimized the jury's sense of responsibility by allowing repeated comments stressing that the ultimate responsibility for the death sentence rested with the court, and that the jury's role was merely advisory. *Id.* at 1457–58. However, in *Harich v. Dugger*, 844 F.2d 1464 (11th Cir.1988) (en banc), we held that certain prosecutorial and judicial comments did not minimize the jury's sense of its role in sentencing. In *Harich*, the trial judge informed the jury on several occasions that the final decision regarding sentencing is for the court to decide. Also, the prosecutor at voir dire stated that the jury's sentencing decision was a recommendation and that the court decides the actual punishment. Unlike in *Mann* however, we stated that "[n]either the prosecutor nor the trial judge implied that the jury's recommendation was superfluous. The fact that the jury knew they were making a recommendation did not detract from the importance of their decision." *Id.* at 1475. Moreover, this court explained that comments which accurately

---

7. In response to the defense's arguments to the jury regarding the gravity of calling for another's death, the prosecution forcefully argued that the defense was in error in trying to force the jury to feel a sense of responsibility for its decision. *Id.* The prosecutor stressed: "Now they would have you believe that you're going to

kill this man and they know-they know that your decision is not the final decision. My God, how unfair can you be? Your job is reviewable. They know it.... [T]hroughout their argument, they said this panel was going to kill this man.... [T]he decision you render is automatically reviewable by the Supreme Court." *Id.*

state the respective functions of the judge and jury are permitted so long as the importance of the jury's role is sufficiently emphasized. *Id.* We stressed that review will be on a case by case basis.

We agree with the district court that the jury's role in this matter was not diminished by the prosecutor's comments. Our review of the record indicates that this trial judge made no statement which would diminish the jury's perception of its important responsibility. The prosecutor's comments actually made the jury more aware of its central role in recommending the death sentence. The prosecutor emphasized that it was the jury's responsibility to hold the petitioner accountable for his crime and that they were the ones needed to return an appeal-proof sentence. *See* Advanced Appendix Vol. 4, B, p. 1279–80. We find that these comments did not operate to deprive Stano of a reliable, carefully determined sentence from a jury fully aware of its critical sentencing responsibility. Consequently, the district court properly denied Stano a new sentencing proceeding.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Stano next contends that he received ineffective assistance of counsel in several respects in the presentation of his defense at both the guilt/innocence and sentencing phases of his trial. First, Stano claims that the district court erred in denying him a full and fair evidentiary hearing on this issue. Second, Stano alleges that his trial counsel was ineffective for failing to challenge all of the confessions introduced at guilt/innocence and for failing to attack all of Stano's previous convictions and sentences introduced at sentencing. Finally, Stano argues that his counsel was ineffective for failing to cross-examine and impeach adequately a key state witness, to object to the testimony of two psychiatrists regarding Stano's competency, and to ensure that Stano received competent mental health assistance at trial.

The district court, after an exhaustive analysis of this issue, concluded that Sta-

no's ineffective assistance of counsel claims were procedurally defaulted under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (procedural default will bar federal habeas review unless the petitioner can show cause for the default and actual prejudice from the alleged constitutional violations). However, in an abundance of caution, the district court held an evidentiary hearing to develop a more complete factual record concerning the actions of Stano's counsel. Since the district court ultimately considered the merits of this claim, we now examine Stano's contentions as well.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), delineated a two-pronged standard for evaluating ineffective assistance of counsel claims:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064.

 *Strickland* requires the petitioner to show that counsel's alleged acts or omissions, upon consideration of all the circumstances, fell outside the wide range of professionally competent assistance. *Id.* at 690, 104 S.Ct. at 2066; *Harich*, 844 F.2d at 1469. There is a strong presumption that counsel provided effective assistance. 466 U.S. at 689, 104 S.Ct. at 2065–66. The court will not find counsel ineffective if their approach to a case was reasonable. 844 F.2d at 1469.

 The test for prejudice involves considerations similar to those under *Brady;* whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to under-

mine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. We note that effective counsel is not errorless counsel, and hindsight should play little role in measuring ineffectiveness. *Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir.1984), *cert. denied*, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985); *Proffitt v. Wainwright*, 685 F.2d 1227, 1247 (11th Cir.1982), *modified*, 706 F.2d 311 (11th Cir.1983), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983).

### 1. Evidentiary Hearing

Under the *Strickland* standard, our review of the record indicates that the district court afforded Stano a full and fair evidentiary hearing on the ineffectiveness claims. The court heard testimony on August 24 and 25, 1987 from two witnesses who could directly address the ineffectiveness issue; Stano's trial counsel, Mr. Russo and Mr. Friedland. (R. 6, p. 104–313; R. 7, pp. 326–414). The witnesses testified regarding their trial tactics and strategy, and the reasonableness of their performance. The state proffered testimony concerning the proper standard of attorney conduct required under the circumstance of this case. Thus, the district court developed sufficient facts at the evidentiary hearing to afford Stano a fair hearing, to render judgment on the claim, and to provide an adequate record for review in this court.

### 2. Challenges to Confessions

■ Stano's claim of ineffectiveness of counsel for failing to challenge both the prior confessions and convictions used in aggravation at sentencing, and the Scharf confessions used at guilt/innocence and sentencing, is without merit. Defense attorney Russo testified that procedurally, he did not know how he could have attacked the prior convictions and litigated them within the time frame of the trial, and that he had never heard of defense counsel collaterally attacking convictions used in aggravation. (R. 7, p. 403–06). Mr. Russo felt that his resources were better spent representing Stano at trial than collaterally attacking other convictions of which he had no indication were involuntary. *Id.* at 407. He further testified that his strategy would not have involved collaterally attacking the prior life convictions when the result of the challenges could mean death sentences. *Id.*

Trial counsel also testified at the evidentiary hearing regarding the Scharf confessions. Mr. Russo stated that it would not have been feasible to attack Stano's confessions since he had confessed to so many people for the murder of Cathy Scharf in direct contravention of counsel's advice.[8] *Id.* at 360. Additionally, Mr. Russo and Mr. Friedland both testified that the defense's strategy at guilt/innocence was to admit all the Scharf confessions to emphasize the inconsistencies among them and prove that Stano did not commit the murder, but rather, falsely confessed to it. *Id.* at 272–74, 355–56. Trial counsel stated that Stano's confession at sentencing to a murder for which he was previously not convicted, but which was not Cathy Scharf, fit into the defense's strategy that Stano was a false confessor. *Id.* at 391.

After careful consideration of the record, we conclude that counsel's performance in their investigation of the facts, consideration of the law, securing of evidence and conduct at trial, was competent. The approach taken by the defense was one which falls well within the objective yardstick that we apply when considering the question of ineffectiveness of counsel. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Sinclair v. Wainwright*, 814 F.2d 1516, 1519 (11th Cir.1987) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066). Competent attorneys completely informed

---

**8.** Mr. Russo clarified: "If there was one confession in this case, one confession only, and I knew that that could be constitutionally attacked, yes, I would constitutionally attack it, but that was not the case in this situation.... Case [sic] in this situation went to trial, was that

Mr. Stano confessed to Paul Crow, confessed twice to John Manis, he confessed to Clarence Albert Zacke, he wrote several letters to the press, gave press interviews ... he confessed to the psychiatrist in the case...."

of the circumstances and law of this case could well have taken action identical to counsel here.

Even if we were to find that competent counsel would not have taken the approach defense counsel used in this case, the petitioner cannot establish the second prong of *Strickland* by showing any prejudice from counsel's alleged errors. No reasonable probability exists that but for defense counsel's alleged omissions, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Had the six prior convictions at sentencing been successfully challenged and suppressed as aggravating circumstances, three other aggravating factors remained to support a jury recommendation of death: 1) The murder was committed while Stano was engaged in the commission of a kidnapping; 2) The murder was especially heinous, atrocious or cruel; and 3) The murder was cold, calculated and premeditated without any pretense of moral or legal justification. When challenging the imposition of capital punishment, the petitioner must show that "there is a reasonable probability that, absent the errors, ... the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. at 2069. We cannot say that the sheer number of prior convictions influenced the jury to recommend a death sentence. Ample record evidence supports a jury recommendation of death based on the circumstances of the Scharf murder alone, especially absent mitigating circumstances. Stano alleges no error in the remaining aggravating circumstances found by the jury. Thus, even if the prior convictions were omitted from the sentencing hearing, the petitioner has shown no reasonable probability that the outcome of the case would have changed.

The same reasoning applies to the allegations concerning the Scharf confessions. If Stano had shown that trial counsel erred by failing to attack his first confession to Detective Crow in March, 1981, the subsequent confessions to Investigator Manis in August, 1982 would still be admissible.

Likewise, if those confessions were also suppressed, the testimony of Clarence Zacke in July, 1983 still remained. Finally, Stano voluntarily reconfessed in September, 1983, to a psychologist, Dr. Mussenden, who examined him pursuant to an order on defense motion. Assuming that an attorney rendered ineffective assistance in failing to present additional argument for suppression of the initial confession, the defendant was not prejudiced where the second confession occurred in entirely different surroundings and would have been admissible. *See Elledge v. Dugger*, 823 F.2d 1439, 1443–44 (11th Cir.1987). Consequently, this claim fails under *Strickland*.

### 3. Cross-examination of State Witness

Stano alleges that his counsel was ineffective for failing to cross-examine and impeach adequately Clarence Zacke, a jail inmate to whom Stano had confessed the Scharf murder. We find that under *Strickland*, this claim lacks merit. The jury and trial judge were aware that Zacke was an untrustworthy witness. Trial counsel brought out that Zacke met Stano while both were in jail, *see* Advanced Appendix Vol. 3, A, p. 898, and that Zacke was a five-time convicted felon. *Id.* at 905. Zacke testified that he traded his testimony for a reduced sentence, return of property, and a prison transfer. *Id.* at 906–07. Defense counsel elicited testimony that Zacke did not come forward with his testimony until after Stano's first mistrial, and that he knew the state's case was weak. *Id.* at 910–11. Counsel also brought out that Zacke watched the first trial on the news every night and that his account of the murder did not match Stano's exactly. *Id.* at 912–13, 905. Finally, the jury and trial judge learned, through the testimony of other witnesses, that doubt existed whether Zacke even had the opportunity to talk with Stano. *Id.* at 942. Accordingly, the trial counsel's approach to handling this witness was reasonable and competent as measured by *Strickland*.

#### 4. Psychiatric Testimony

█ Stano claims that his counsel was ineffective for failing to object to the testimony of two court-appointed psychiatrists that Stano was sane, competent and not entitled to the statutory mitigating circumstance of "extreme mental and emotional disturbance" and "substantially impaired." *See* Fla.Stat. § 921.141(6)(b) and (f). We find that this testimony, presented at the sentencing phase of the trial, did not violate Stano's constitutional rights under the fifth, sixth, eighth and fourteenth amendments.

The Supreme Court recently ruled that the admission of findings from a psychiatric examination of the defendant, proffered by the state during the guilt phase of a trial to rebut psychiatric evidence presented by the defendant, did not violate the defendant's constitutional rights where the prosecution and defense had jointly requested the examination, and where the defendant had attempted to establish a "mental status" defense. *Buchanan v. Kentucky*, 483 U.S. 402, 423–24, 107 S.Ct. 2906, 2918, 97 L.Ed.2d 336 (1987). In *Buchanan*, the Supreme Court stated that the prosecution may rebut the defense's presentation of psychiatric evidence with evidence from the reports of the examination requested by the defense. *Id.* In this case, Stano placed his mental status at issue in mitigation at sentencing, and relied on the psychological report of Dr. McMillan, the defense's expert. The state, therefore, could properly offer the results of the psychological reports the defense itself requested. In light of this, defense counsel's failure to object to this testimony was a correct decision. Thus, under *Strickland*, counsel rendered reasonably effective assistance.

#### 5. Mental Health Assistance

█ Stano alleges that his trial counsel was ineffective for failing to ensure that he received competent mental health assistance at the guilt/innocence and sentencing phases of trial. Stano relies on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) as establishing his right of access to a psychiatrist when the state indicates that it will present evidence of the defendant's future dangerousness as an aggravating factor at sentencing. Stano claims that Dr. McMillan was incompetent, failed to accurately utilize one of the psychological tests given to the petitioner, and erroneously compared Stano's psychological profile with those of mass murderers.

Upon review of the record, we conclude that Stano has failed to make a colorable showing of ineffective assistance of counsel on this issue under *Strickland*. Defense counsel ensured that Stano was examined by several court-appointed psychiatric experts at various stages of the proceedings. One of the experts, Dr. McMillan, interviewed and evaluated the petitioner in depth, explored his life history, and psychologically tested Stano. *See* Advanced Appendix Vol. 7, G, p. 92. Dr. McMillan found that Stano had suffered gross emotional and physical neglect as a child, had abnormal and antisocial behavior, suffered from paranoid schizophrenia, committed acts which were the product of mental disease or defect, and exhibited characteristics of a neurologically impaired personality. *Id.* In addition, defense counsel procured a court order permitting Stano to undergo a CAT scan to test for neurological damage.

Trial counsel's actions concerning Stano's mental health assistance were reasonable and competent. The psychiatric experts involved in the case adequately assisted in the defense. An indigent defendant has no "constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Ake*, 470 U.S. at 83, 105 S.Ct. at 1096. Although Dr. McMillan was appointed by the court and was not Stano's personal choice, the record reveals no evidence supporting Stano's allegation of incompetence. Stano's claim therefore, fails under *Strickland*.

### E. REMAINING CLAIMS

Stano also asserts the following claims: 1) The trial court improperly admitted, at Stano's second trial, the testimony of the victim's parents given in the prior Stano

mistrial; 2) The trial court erred in permitting the court clerk to testify, through the victim's parents' testimony, as to the authenticity of certain exhibits; 3) The trial court improperly allowed the state's dental expert to testify beyond his expertise regarding identification of the victim; and 4) The trial court erred in permitting specific evidence regarding Stano's prior convictions as aggravation at sentencing. We find that each of these rulings by the trial judge was proper, and did not deprive the petitioner of a fundamentally fair trial. *Shaw v. Boney*, 695 F.2d 528, 530 (11th Cir.1983).

Further, Stano claims that the district court erred in denying an evidentiary hearing on whether the state's witness, Clarence Zacke, was a state agent. We agree with the district court that this claim has no basis in the record, is highly speculative, and that no evidentiary hearing was required. Finally, Stano asserts the district court erred in finding procedural default on the ineffective assistance of counsel claims. Because we agree with the district court that the underlying substantive claims are without merit, we need not reach the procedural issue.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief.

ANDERSON, Circuit Judge,
concurring in part and dissenting in part:

I agree with the resolution of each claim discussed by the majority, except for the *Brady* claim and the *Henry* claim. With regard to those two claims, I respectfully dissent.

The procedural posture of this case is that Gerald Stano has had the benefit of an evidentiary hearing only on his ineffective assistance of counsel claim, not on his other claims, including the two based on *Bra-*

dy v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). For the reasons that follow, I conclude that Stano is entitled to an evidentiary hearing on these two claims.

If there has been no evidentiary hearing in state court on an issue raised on habeas corpus, one is required if the petitioner alleges facts which, if true, would entitle him to relief. *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *Porter v. Wainwright*, 805 F.2d 930, 933 (11th Cir.1986), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). *See also Agan v. Dugger*, 835 F.2d 1337, 1339 (11th Cir.1987) (evidentiary hearing warranted where record inconclusive on face but allegations raise relevant issue).[1] The petitioner will not be entitled to an evidentiary hearing when his claims are merely "conclusory allegations unsupported by specifics" or "contentions that in the face of the record are wholly incredible." *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). With these standards in mind, I will proceed to analyze the two claims.

## I. *BRADY* CLAIM

The majority holds that there was no error in denying Stano an evidentiary hearing on his *Brady* claim. A *Brady* violation occurs where: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial. *See United States v. Burroughs*, 830 F.2d 1574, 1577–78 (11th Cir.1987), *cert. denied sub nom. Rogers v. United States*, —— U.S. ——, 108 S.Ct. 1243, 99 L.Ed.2d 442 (1988). Suppressed evidence is material when "there is a reasonable probability that . . . the result of the proceeding would have been different" had the evidence been available to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

---

1. The Supreme Court has noted the importance of an opportunity for factual development of a habeas claim: "Because detention so obtained is intolerable, the opportunity for redress, which presupposes the opportunity to be heard, must never be totally foreclosed . . . It is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues." *Townsend*, 372 U.S. at 312, 83 S.Ct. at 756.

Specifically, Stano has alleged that the prosecution suppressed evidence that Paul Crow, the main police investigator, Donald Jacobson, one of Stano's defense attorneys, and Dr. Ann McMillan, the defense psychologist, colluded. The collusion was with the goal of exploiting Stano's mental vulnerabilities in order to coerce murder confessions, including confessions to the Scharf killing. Stano alleges that Dr. McMillan, at Jacobson's suggestion, gave Crow psychological information that would make his coercion more likely to succeed. He alleges that Jacobson assisted Crow in coercing the confessions, and that Crow used the information and assistance in his on-going eliciting of confessions.

Stano has proffered evidence which gives rise to the following reasonable inferences.[2] Stano was arrested on his first murder charge in April, 1980. J.W. Gadberry, the officer who had first brought Stano in, participated in the early investigation, which was led by Sergeant Paul Crow. Soon after Stano's arrest, Don Jacobson was appointed as Stano's attorney, and he hired Dr. Ann McMillan as a defense psychologist. Both Crow and Jacobson were interested in producing books about their work with Stano, if he turned out to be a serial killer.[3] There is evidence that Crow even hired a literary agent.[4] Jacobson asked McMillan to find out if Stano was a serial killer and indicated that he was not interested in representing Stano unless he was. Jacobson instructed her to tell Crow how best to interrogate Stano in order to elicit confessions, by exploiting Stano's mental vulnerabilities.[5]

Crow used that psychological information in interrogating Stano, as described below.[6] He maintained close contact with Stano day after day and deprived him of contact with others. There were frequent long interrogation sessions at which Crow would not allow anyone else to be present.[7] Crow stated to a freelance writer that he could lead Stano to the correct result and that he would rehearse confessions with him.[8] Gadberry, the police detective, was with Stano at the time of the first murder confession, in another case, and stated that Crow led Stano to the body, not the reverse.[9]

Jacobson, an ex-FBI agent who also did some legal work for members of the police department, worked extensively with Crow and the state attorney. He often allowed members of the police investigatory team to interrogate Stano outside the presence of counsel.[10] Jacobson helped formulate the questions Crow would address to Stano, and discussed with Crow telling Stano to confess to more killings in order to become eligible for an insanity defense.[11] He

2. Not all of the following evidence is claimed by Stano to be *Brady* material. However, it is useful to view the *Brady* material in the context of all relevant proffered evidence which supports the need for an evidentiary hearing. As indicated in the text below, the principal *Brady* evidence claimed by Stano relates to the collusion between detective Crow and the defense attorney and psychologist.

3. Appendix 19, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Lissa Gardner re Ecker conversation); Appendix 100, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Virginia Shubert re Detective Lehman conversation).

4. Appendix 19, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Lissa Gardner re Ecker conversation).

5. The above information is from a statement made by McMillan. Appendix 20, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Scharlette Holdman re McMillan conversation).

6. *Id.;* Appendix 16, Appendix to Petition for Writ of Habeas Corpus (Gadberry Affidavit).

7. Appendix 16, Appendix to Petition for Writ of Habeas Corpus (Gadberry Affidavit); Appendix 19, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Lissa Gardner re Ecker conversation). *See also* Pet. Exhibits 3–5 (interrogation with only Stano, Crow and Lehman present).

8. Appendix 19, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Lissa Gardner re Ecker conversation).

9. Appendix 16, Appendix to Petition for Writ of Habeas Corpus (Gadberry Affidavit).

10. *See, e.g.,* Pet. Exhibits 3–5 (interrogation with only Stano, Crow and Lehman present).

11. Appendix 19, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Lissa Gardner re Ecker conversation); Pet. Exhibit 4 at 14

also advised Stano's parents to talk freely with Crow and Dr. McMillan.[12]

The information given by McMillan to Crow included Stano's psychological vulnerabilities. There is psychological evidence that Stano was susceptible to strong authority figures who relied on manipulation and that he could not appreciate the consequences of his confessions. McMillan now admits to advising Crow to play on Stano's "grandiosity"; other evidence is that Stano would likely confess in order to gain attention. Gadberry, who was present at the early stage of the investigation, felt that Stano had an abnormal need for attention and affection due to mental illness, and that Crow exploited this. Another detective, who worked with Crow on another Stano murder investigation approximately eight months before the first Scharf confession, believed that in making confessions Stano "got carried away by delusions of grandeur."[13]

There is also evidence that the coercion led to Stano confessing to murders that other jurisdictions refused to prosecute. Confessions obtained by Crow to murders committed in New Jersey, Tampa Bay and Titusville, Florida were not prosecuted, due to Crow's interrogation techniques, lack of physical evidence, or the discovery of the bona fide offender.

Stano's first murder confessions to Crow came in April and May of 1980. In May and June, 1980, Crow and Detective Lehman interviewed Stano in the Van Haddocks murder. The transcript of the interviews, at which counsel is not present, includes instances of promises,[14] threats,[15] and coaching.[16] In March, 1981, Crow, Jacobson, and Dr. McMillan met with Stano's father, whom Jacobson had advised to cooperate with Crow. They asked Mr. Stano

(Crow–Lehman interrogation); Appendix 29, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Eugene Stano).

12. Appendix 29, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Eugene Stano); Appendix 20, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Scharlette Holdman re McMillan conversation).

13. Appendix 100, Appendix to Petition for Writ of Habeas Corpus (Affidavit of Virginia Shubert re Detective Lehman conversation).

14. Two examples follow:
 Crow: Gerald, the more you can come across with, we're gonna be able to take you out of this thing and put you in an isolated situation. Get you to ...
 Stano: What do you mean by that?
 Crow: Out from the groups.
 Stano: No, I don't want no damned single cell.
 Lehman: You're gonna want, Gerald, believe me ... there's a few people out here that are out to slit your ... throat.

 Lehman: And we don't want to see you get in that chair. We're keepin', we're trying to keep your ass out of it ... as hard as we can. Appendix 64, Appendix to Petition for Writ of Habeas Corpus.

15. The following are several examples from the interrogation:
 Crow: Now they can take you out of here, take you back up north....
 Lehman: You ever see a Governor's warrant?.... It comes through with goddamned ribbons and doilies on it and it's like a god-

damned skull. And it says you're gone whether you like it or not....
 Crow: We gotta get some clout so we can keep you in the state.

 Crow: You got problems.
 Stano: Thanks.
 Crow: More problems than you think. Because two bodies is not going to make you eligible for insanity.
Appendix 66, Appendix to Petition for Writ of Habeas Corpus.
 Lehman: [T]he angle that you struck them with it, why that blade didn't break. And part of the way we're going to keep you down here is just like Sergeant Crow said—Pennsylvania and Jersey, man, they're chompin' at the bit.
 Stano: They think I did ...
 Lehman: I don't want to see you get the chair. There's a guy coming up to get the chair next week up in Georgia ... I can't help but think that somewhere along the line you got the answers for us.
Appendix 67, Appendix to Petition for Writ of Habeas Corpus.

16. This is one of many examples:
 Lehman: Done a little research into this knife you're talking about, a retractable blade. The bone to the skull on Haddocks and the breast plate on Maher don't jive up with what you're telling us what you used on them....
 Crow: You had to use a stronger blade than that, Gerald.
Appendix 67, Appendix to Petition for Writ of Habeas Corpus.

to convince Stano to confess to more killings. He was told that more confessions were necessary to save Stano's life, because if a pattern of insanity were established Stano would not be executed. Crow then gave Mr. Stano specific information relevant to various murders to use in asking Stano to confess. When Mr. Stano met with his son, Mr. Stano cried and begged Stano to confess, explaining the insanity theory to him and encouraging him to talk to Crow about other murders. Stano asked his father to contact Crow; a few days later, Stano gave his first confession to the Scharf killing.[17]

The evidence of collusion and coercion by Crow continues through the period of the second confession, which occurred on August 11 and 12, 1982. Crow had continued working with Stano on pending cases through late 1982. Detective Manis was contacted by Crow to the effect that one of Stano's confessions matched Manis' pending Scharf case. In January, 1982, Manis spoke to Stano, who denied committing the Scharf murder. Crow continued to visit Stano often at the prison during this period. In April, Crow initiated another meeting between Stano and Manis, but when Manis arrived, Crow had been inside and said that Stano would not talk. Also, Crow and Stano were still communicating personally: in June, Stano wrote to Crow and said he wanted to help by "telling you what you want to know about anything," and asked for contact with Howard Pearl, a public defender. In July, Jacobson, no longer representing Stano, instructed him to make "a clean breast of everything" and that Crow was his best source; this letter had a covert copy to Crow.[18] On August 10, Stano

was transferred to Crow's jail, and a memo was circulated restricting access to Stano to Crow only.[19] On August, 11, Manis interviewed Stano for 1½ hours, with Crow present about half the time; on August 12, 1982, the second Scharf confession was taped.

As noted above, to establish a violation of *Brady*, the defendant must show the suppression of material, favorable evidence. The principal *Brady* evidence claimed by Stano relates to the alleged collusion between Crow, Jacobson and McMillan. This evidence includes of course Crow's own knowledge of the collusion. Documentary evidence supporting the inference of collusion and coercion would include the covert copy of Jacobson's letter and the tape of the prior confession revealing promises, threats and coaching. Portions of Gadberry's recent affidavit suggests that a second detective in the prosecution team, i.e., Gadberry, had knowledge that Crow's interrogation of Stano impermissibly exploited his mental vulnerabilities.

It is clear that the foregoing evidence was suppressed by the prosecution. All of the material was in the prosecution's possession. Crow knew the information, and his knowledge is imputed to the prosecution. *See United States v. Antone*, 603 F.2d 566, 569–70 (5th Cir.1979) (knowledge imputed between two sovereigns pooling investigative energies to become part of an investigative team); *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir.1977) (state law enforcement officer is part of prosecution team and his knowledge is imputed to prosecution).[20] Similarly, Gadberry's knowl-

---

17. The affidavit of Stano's father, Eugene Stano, provides the information regarding this episode. Appendix 29, Appendix to Petition for Writ of Habeas Corpus.

18. The draft of the letter reads, in relevant part: "Your best source is still Sergeant Paul Crowe [sic] (send Paul a covert copy of this letter—have Paul stop by and pick this up and read it and throw it in the wastebasket)." Pet. Exhibit 7.

19. The memo states that "under *"NO"* circumstances is this inmate to talk to *ANY DETECTIVE–POLICE OFFICER–FEDERAL AGENT–*

*STATE ATTORNEY OFFICE or ANY ATTORNEY.* All appointments for this inmate to speak to *ANY* person will be arranged and handled by Sergeant Paul Crow, *"ONLY."* Sergeant Crow will handle all telephone calls, visitors, etc. He will have *NO* contact with anyone, except jail personnel, in the normal course of security checks." Appendix 47, Appendix to Petition for Writ of Habeas Corpus.

20. These cases were decided prior to the close of business on September 30, 1981, and are binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

edge is imputed to the prosecution. Also, the prosecution would have had possession of the covert letter (through Crow) and the transcripts of the Crow interrogation. This was material that the prosecution had the duty to disclose.[21] Also, the defense did not have equal access to the material. *See United States v. McMahon*, 715 F.2d 498 (11th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983). While the defense had some evidence that Stano was a pathological liar and that some jurisdictions had declined to prosecute him, the defense did not have access to crucial infor-

mation. In particular, it is not reasonable to expect the defense to suspect the existence of collusion between Jacobson, Crow and McMillan and the coercion that allegedly took place.

The *Brady* material is also favorable to the defense, the second prong of the test. The evidence supports inferences tending to show that Stano's confessions in the Scharf case were not voluntary. The evidence raises an inference that collusion by Jacobson, McMillan and Crow enabled Crow to coerce confessions.[22] The claimed

---

**21.** The majority states that the Gadberry information need not have been disclosed because it was "preliminary, challenged or speculative information." *See United States v. Agurs*, 427 U.S. 97, 109 n. 16, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976) (quoting *Giles v. Maryland*, 386 U.S. 66, 98, 87 S.Ct. 793, 809, 17 L.Ed.2d 737 (1967) (Fortas, J., concurring)). While I agree that Gadberry's difference of opinion with the other members of the police as to Stano's responsibility for one of the other murders may be the kind of speculative preliminary police work that the prosecution would have no obligation to disclose, the Gadberry information is more extensive than that. The Gadberry information proffered by Stano is relevant to the allegations of collusion and to Stano's mental state and its exploitation by Crow's interrogation techniques.

**22.** I note that the majority assumes that the proffered evidence of collusion and coercion relates only to confessions to murders other than the Scharf murder. My discussion of the evidence demonstrates that the collusion continued and tainted the Scharf confessions also. *See Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (evidence surrounding the making of a confession bears on its credibility and voluntariness and must be admitted, especially in a case with no physical evidence).

On the basis of its erroneous factual assumption, the majority then suggests that certain evidentiary rules would render inadmissible any evidence challenging or explaining any of the previous convictions or the confessions on which such prior convictions were based. I doubt that the majority has correctly applied the evidentiary rules.

Under Florida law, a court must admit evidence tending to explain the defendant's previous convictions. *Francois v. State*, 407 So.2d 885, 890 (Fla.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982); *see also Elledge v. State*, 346 So.2d 998, 1001 (Fla.1977) (no error in admission of circumstances leading to conviction to aid analysis of defendant's character), *cert. denied*, 459 U.S. 981, 103 S.Ct. 316, 74 L.Ed.2d 293 (1982). The Florida supreme court stated in *Francois* that "a defendant must

be allowed to present evidence pertaining to the degree of his or her involvement in and the circumstances of the events upon which previous convictions are based." The court held that there was no error in the case because the defendant had made no proffer, but specifically stated that "it would be a different case if the court had excluded evidence proffered by the defendant rebutting the state's evidence of aggravation or relative to any matter in mitigation." *Id.; see also Tafero v. State*, 406 So.2d 89, 95 (Fla.Dist.Ct.App.1981) (dicta stating that evidence that a previous crime was not actually committed by the defendant would have been required to be admitted in his capital sentencing proceeding). *But see Buford v. State*, 403 So.2d 943, 953 (Fla.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1039, 71 L.Ed.2d 320 (1982). Therefore, the evidence of the circumstances of Stano's previous confessions would be admissible under Florida law.

It bears underscoring that Stano does not seek to introduce evidence *legally* attacking his prior confessions and guilty pleas. The values of economy and finality are not implicated by the purposes for which Stano proffers his evidence: regardless of the extent to which Stano uses evidence which implicitly impeaches the previous confessions to explain the circumstances of the Scharf confessions, the previous confessions' legal validity will stand unimpaired, unless they themselves are attacked in a direct or collateral proceeding. In contrast, the cases cited by the majority describe the legal consequences of a guilty plea with respect to a later direct or collateral legal attack on that conviction. *See, e.g., McCoy v. Wainwright*, 804 F.2d 1196 (11th Cir.1986).

Also, I note that even were such evidence not admissible under Florida law, it would be admissible as a matter of Federal constitutional law. According to the line of cases following *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a capital defendant may not be precluded from offering as a mitigating factor any aspect of his character or *record*. *See also Skipper v. South Carolina*, 476 U.S. 1, 2–6, 106 S.Ct. 1669, 1670–71 (1986); *Perry v. State*, 395 So.2d 170, 174 (Fla.1980) (following

*Brady* material which is directly relevant to collusion and coercion would be favorable on this ground. Under *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), there must be state coercion to invalidate a statement on the ground of involuntariness—the lone fact of the defendant's mental deficiencies will not establish coercion. *Connelly*, 107 S.Ct. at 520. However, the defendant's mental vulnerability and whether the state is aware of the vulnerability and exploits it in the course of the coercion are relevant to establishing the validity of a confession. *Id.* at 520–21. Moreover, the claimed *Brady* evidence is favorable in that it is independently relevant as evidence to impeach the testimony of Crow and Manis, who testified about the circumstances of most of the confessions. *See United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985) (*Brady* requirement applies to impeachment material).

The *Brady* evidence is also material, the final prong of the test. The standard for materiality of *Brady* evidence is whether "there is a reasonable probability that ... the result of the proceeding would have been different" had the evidence been available to the defense. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Stano was convicted on the basis of three confessions: the confession to Sergeant Crow, the confession to Detective Manis, and the Zacke testimony.

The evidence described above supports Stano's allegation that coercion and collusion occurred with respect to the first two confessions. During the period in which the first confession took place, there is evidence of Jacobson and McMillan's collusion with Crow. There is also evidence that Stano was particularly vulnerable because of mental illness, that the purpose of the collusion was to take advantage of that, and that Crow in fact exploited it.

There is other evidence that during this period that Crow used threats and promises in order to obtain confessions from Stano. During the period of the second confession, there is evidence that the collusion and coercion continued. Crow's continued contact and correspondence with Stano raises an inference that he continued to be in a position to exploit Stano's mental vulnerabilities. The circumstances of the Manis confession also support an inference that Crow "managed" the confession, only allowing it when he had sufficiently coached or coerced Stano. Finally, the letter from Jacobson to Stano, with its "covert" copy to Crow, raises an inference that the collusion was continuing. Thus, the evidence impeaches the validity of both confessions, due to the evidence of collusion and the evidence of Stano's vulnerability to coercion resulting from that collusion. *See Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986).

In terms of the essential factors in the trial's outcome, this leaves the Zacke confession. As I discuss below, the Zacke confession is constitutionally suspect, and may be inadmissible as constituting a violation of *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). Even if the Zacke confession is not constitutionally infirm, Zacke was a convicted felon who had recently traded testimony for favorable treatment. His testimony was seriously weakened at trial by the defense's cross-examination on these and related grounds. If the *Brady* material undermined the other two confessions and the prosecution was forced to rely primarily on Zacke's testimony, the presence of the *Brady* material would be "sufficient to undermine confidence in the outcome" of the trial. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

*Lockett*). Evidence of the circumstances of Stano's previous convictions would speak directly to his record.

Finally, it appears that two of the prior convictions relied upon at sentencing in this case have been challenged collaterally, and those challenges are now pending in this court. *Stano v. Dugger*, No. 88–3375. If one or both of those prior convictions are invalidated, the instant death sentence might have to be vacated. *Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988).

The majority also refers to the fact that Stano confessed to several murders at sentencing. However, all of the sentencing confessions relate to murders other than the Scharf killing.[23] In fact, at sentencing Stano specifically denied that he had killed Scharf. Because the confessions at sentencing related to other murders, they cannot undermine the materiality of the *Brady* evidence.

I conclude that reasonable inferences from the proffered evidence satisfy all three prongs of *Brady*, and that Stano is entitled to an evidentiary hearing.

## II. *HENRY* CLAIM

Stano is also entitled to an evidentiary hearing with respect to his *Henry* claim. Under *Henry*, incriminating testimony elicited by an undisclosed government informant is inadmissible as violative of the right to counsel. *United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). The district court found no merit in Stano's *Henry* claim, finding that it was speculative and unsupported in the record. The majority opinion agrees with the district court. •

In *Henry*, the Supreme Court applied the principle articulated in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to the situation of an inmate-informant. The Court held that the inmate-informant's deliberate elicitation of incriminating testimony violated *Massiah*'s prohibition of state elicitation of incriminating information from a defendant in the absence of counsel. To establish a *Henry*

violation, each of the following two tests must be satisfied: (1) the informant's actions must be attributable to the state; and (2) the informant must be more than just a passive listener—he must "deliberately elicit" the incriminating information from the defendant. *Henry*, 447 U.S. at 269–72, 100 S.Ct. at 2186–88.

Stano's *Henry* claim is not so speculative that it does not merit an evidentiary hearing. As noted above, in the posture of this case, Stano is entitled to an evidentiary hearing if he alleges facts which, if true, would entitle him to relief. The claim is not so devoid of factual content as to be impermissibly conclusory, nor does evidence in the record reveal Stano's contentions to be wholly incredible. *See Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). I will discuss in turn the evidence as it pertains to the state agency and the "deliberately elicit" prongs.

Stano alleges that Clarence Zacke was placed in the same jail to elicit incriminating testimony from Stano. With respect to the state agency requirement, the following evidence in the record supports Stano's claim. Moxley, the prosecutor at Stano's trial, was also Zacke's prosecutor. The notes in the prosecutor's file in the Zacke case indicate that Zacke was interviewed by Moxley's office on April 15, 1983, and on April 26, 1983. At the time, Zacke was in the state prison. At the April 15 meeting, Zacke promised to help the prosecution any way he could in the future, and the prosecutor stated he would try

---

**23.** Stano also made a confession regarding Scharf in 1983 to Doctor Mussenden, a psychologist. This confession, which was not relied upon at trial, should not prevent Stano from being entitled to an evidentiary hearing. It is impossible to tell from the record the circumstances of the statement; thus, it cannot conclusively rebut Stano's other evidence. Also, a statement of this type made to an examining psychologist would be inadmissible to show guilt or innocence. *See* Fla.Stat.Ann. 90.503(4) (1979); *McMunn v. State*, 264 So.2d 868, 870 (Fla.Dist.Ct.App.1972) (applying predecessor statute). *See also Alvord v. Wainwright*, 725 F.2d 1282, 1294 (11th Cir.), *cert. denied*, 469 U.S. 956, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984) (discussing Florida patient-psychotherapist eviden-

tiary privilege). It therefore would not have changed the outcome at trial.

The majority also suggests that Stano's sentencing confessions rebut the allegations of improper influence. However, the record contains several types of evidence showing that Stano is mentally ill in a manner that leads him to falsely confess to crimes. Given this propensity, any collusion that convinced Stano that he would obtain life if he confessed to many murders, and Crow's exploitation of Stano's mental vulnerabilities, could very well have a continuing effect; under this reasoning, the circumstances of the sentencing confessions would not conclusively rebut the continuing taint of the demonstrated earlier improprieties.

reward Zacke in return.[24] The prosecution file gives rise to an inference that the prosecution and Zacke agreed that Zacke would be returned to the Brevard County Jail and receive leniency in exchange for telling the police what he heard from prisoners about other murders.[25] One of the notes in the prosecution file deals with setting up a plea date for Zacke. At the bottom of that page is the notation: "When G. Stano is moved, we can move C.Z. into his cell." The proffered evidence also indicates that Zacke was in fact transferred to the Brevard Jail and placed in proximity to Stano. The evidence also shows that in July Zacke engaged in conversation with Stano in the jail exercise yard, resulting in Stano's confession.

The foregoing evidence supports Stano's allegation that Zacke was an agent of the state at the time he engaged Stano in conversation. The proffered evidence permits an inference that the state moved Zacke, placed him in proximity to Stano, and agreed to reward Zacke in exchange for his agreement to tell the police what he could learn from Stano. I conclude that Stano's allegations are not merely conclusory nor wholly incredible in the face of the record, *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629, and therefore Stano is entitled to an evidentiary hearing on this agency issue.

Neither does the record conclusively rebut the required showing that the informant "deliberately elicited" the incriminating statement. The incriminating statements were made in the jail's exercise yard, during a 1½ hour conversation. Stano and Zacke were taken out together and were the only prisoners in the yard. It is unclear who initiated the conversation, which began with a discussion of cars, but it was Zacke who steered it specifically to murder.[26] Stano volunteered that the police had torn his car apart looking for blood, but did not find any. Zacke then asked Stano why the police did not find blood and what made them think they were going to. In response to this question, Stano admitted having killed. Throughout the rest of the conversation, which focused on the Scharf murder, Zacke actively asked questions of Stano, moving the conversation along.[27] This degree of involvement is at

24. At the meeting, Zacke said, "if there's anyway I can help, law enforcement, I will help. And not just specifically relate to the cars ... I will cooperate, to the best of my knowledge, with anything else ya'll want to know, that I may know anything about. Regardless of what it is." A moment later, the prosecutor responded, "Now Mr. Zacke, the other things that I'm sure you've got information on after this case gets further down the road, I'm gonna' put a price tag on um' and the more you do ..., the more I'm going to try and do for you." Appendix 127, Appendix to Petition for Writ of Habeas Corpus (Statement of Clarence Albert Zacke).

25. This inference is supported by the fact that Zacke had previously traded information for leniency, that the above-described language from the Zacke interview includes Zacke's promise to reveal additional information and the prosecutor's promise that he would try reward it, and the notes indicating that Zacke would be put in proximity to Stano when brought back to the Brevard County Jail.

26. Zacke testified that the conversation began in the following manner:
We also talked—he had seen my truck and my Cadillac and was talking about them, too, that had been confiscated.... Then he told me that they tore the whole interior out of his Trans Am.... searching for blood in his Trans Am.... We talked about how fast Trans Ams were and stuff like that.
*Then I asked him, I said how come they did not find no blood in your car? What made them think they were going to?* He said they think I am dumb enough to kill girls in my car and leave blood ... He said when I kill them, I don't splatter blood all over my car ... I said yes, I read the paper. *I said you killed thirty nine or forty of them.* He said no, I have killed a hundred.
Deposition of Clarence Zacke, 34–35 (emphasis added).

27. After having asked why Stano killed, Zacke's participation moved the conversation to the details of the Scharf murder:
Then he says Cathy was a tramp, a pure tramp. I said who is Cathy?.... He told me, he says the girl that he is on trial is here in Brevard County for killing....
He said he took his time with her ... I said how is that? He said well, I stabbed her a few times, but he said I did not stab her very deep ... I said is that how you killed her? He said no....
I said don't you feel anything about it? He said no.
Deposition of Clarence Zacke, 35–38.

least as extensive as that at issue in *Henry* itself, where the informant had not initiated the conversation and had taken no more steps to elicit the evidence than to engage in conversation with Henry. *United States v. Henry*, 447 U.S. at 270–74, 100 S.Ct. at 2187–88.

This evidence permits an inference that Zacke purposefully directed the conversation to incriminatory matters, i.e., that he "deliberately elicited" the confession from Stano. Thus, given my conclusion with respect to the state agency prong, neither one of the required showings is wholly incredible in light of the evidence, and thus Stano is entitled to an evidentiary hearing on his *Henry* claim.[28]

### III. CONCLUSION

Stano has alleged facts which, if true, are sufficient to grant relief under *Brady v. Maryland* and *United States v. Henry*. These two claims are not mere conclusory allegations, and they are not wholly incredible in light of the record. Therefore, I conclude that Stano is entitled to an evidentiary hearing on these two claims.

### ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC

Before TJOFLAT, Chief Judge, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON and COX, Circuit Judges.

BY THE COURT:

A member of this court in active service having requested a poll on the application for rehearing in banc and a majority of the judges of this court in active service having voted in favor of granting a rehearing in banc,

IT IS ORDERED that the above cause shall be reheard by this court in banc *with* oral argument during the week of February 5, 1990. The clerk will specify a briefing schedule for the filing of in banc briefs. The previous panel's opinion is hereby VACATED.

---

28. The majority addresses the merits of Stano's *Henry* claim without addressing the state's argument that the claim is procedurally barred. Accordingly, I also will not address the procedural issue. In any event, "cause" would probably be established by the state's suppression of the relevant *Brady* evidence, i.e., evidence from the prosecutor's file of the arrangement between the state and Zacke that Zacke would receive leniency and Zacke would be transferred close to Stano and would tell the police what he learned from Stano. The "prejudice" prong is obviously established.