No. 85–6956. ALDRICH *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS. C. A. 11th Cir. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is under all circumstances cruel and unusual punishment forbidden by the Eighth

and Fourteenth Amendments, I would vacate the judgment of the Court of Appeals for the Eleventh Circuit insofar as it left undisturbed the death sentence imposed in this case. *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting). However, even if I believed that the death penalty could be imposed constitutionally under certain circumstances, I nevertheless would grant certiorari because petitioner was denied effective assistance of counsel at his trial in violation of the Sixth and Fourteenth Amendments.

I

Petitioner Levis Leon Aldrich was charged with the murder of Robert Ward, the night manager at a restaurant where Aldrich had at one time been employed. Ward's body was discovered at 12:19 a.m. on September 3, 1974, by sheriff's deputies responding to the restaurant's burglar alarm. Ward had been shot in the head. The restaurant's safe had been emptied of the evening's receipts, estimated by the owner at between $600 and $900. At roughly 2 a.m., police stopped petitioner, who was driving his car slowly by the restaurant. Petitioner was carrying more than $500 in cash. At their request, petitioner took the police officers to the hotel room in which he had been staying since his release from prison the week before. There he showed the officers his receipt for $558.58 paid to him by the Department of Corrections at the time of his release.

The shotgun which had killed Ward was later discovered by the police, broken apart, in two ditches in the surrounding neighborhood. No physical evidence at the crime scene or on the shotgun linked petitioner to the killing. However, after further investigation, petitioner was arrested and indicted.

Aldrich was represented by appointed counsel from the Public Defender's office. The only member of that office who conducted any investigation or undertook any preparation for the trial until two weeks before the trial date was a legal intern in the office, who during the relevant period was not yet a member of the bar. Trial counsel did not exercise the right, under Florida law, to depose any of the State's 41 prospective witnesses. No one from the Public Defender's office examined any of the State's physical exhibits. Of the seven prospective witnesses identified by the defense before trial, petitioner's counsel had interviewed only two. Pet. for Cert. 12.

Four days before the opening of trial, petitioner's counsel moved for a continuance. The motion was heard on the scheduled trial date, at which time defense counsel told the court: "This case is not prepared. We are not in a position to provide competent legal representation." *Id.*, at 11. The trial court denied the motion and insisted that the trial begin immediately. Petitioner's trial counsel, who was fully experienced in the trial of capital cases, testified in the state postconviction hearing that he had never been as unprepared to try even a misdemeanor case as he was for petitioner's capital murder trial. *Ibid.*

The State's case hinged upon the testimony of Charles Strickland. Strickland owned the shotgun which had killed Ward; he told police that he had lent it to petitioner on the evening of the murder. Strickland claimed that petitioner called him the next day and told him that he had used the gun in a robbery and had killed a man. According to Strickland, petitioner asked him to help recover the gun from a parking lot near the scene of the murder. Strickland testified that he did so, after which he cleaned the gun, broke it down, and threw the parts into separate ditches. Although Strickland initially told police that he had lost the gun, he later changed his mind and led police to the evidence. James Norman Sapp, who along with Strickland had met petitioner in prison, testified that while in prison petitioner had told Sapp that he intended to rob the restaurant when released.

The sole defense witness was petitioner himself, who denied any involvement in the crime. He testified that he had been fishing until 10:30 or 11 p.m. on the night of the murder, and had then gone to a bar until 1:30 or 2 a.m. After leaving the bar, petitioner testified, he drove out to meet a woman who had a room to rent. On the way to her house, he passed the restaurant, and was stopped by the police.

The jury found petitioner guilty of capital murder. At petitioner's express request, counsel presented no evidence in mitigation of sentence. The jury returned an advisory verdict in favor of the death sentence, which the trial court then imposed. The Florida Supreme Court affirmed petitioner's conviction and death sentence. *Aldridge* v. *State*, 351 So. 2d 942 (1977).* Postconviction relief was denied. *Aldridge* v. *State*, 425 So. 2d 1132

---

*Petitioner's last name was apparently misspelled as "Aldridge" in the state-court proceedings.

(1982), cert. denied, 461 U. S. 939 (1983). In his first federal habeas petition, Aldrich claimed that he had been denied effective assistance of counsel at his trial. The District Court denied relief, and the Court of Appeals affirmed. 777 F. 2d 630 (CA11 1985).

## II

The District Court found, and the Court of Appeals agreed, that petitioner's trial counsel was so handicapped by absence of preparation that he could not meet the objective standard of reasonably effective assistance of counsel required by this Court in *Strickland* v. *Washington*, 466 U. S. 668 (1984). The Court of Appeals held, however, that petitioner had failed to show that he was prejudiced by the inadequacy of his counsel, as required by *Strickland, supra.* The Court of Appeals found that further investigation before trial would not have disclosed helpful evidence: "On cross-examination at the post-conviction hearing, [counsel] who represented Aldrich at trial were unable to point to any fact learned at trial, or later, that might have been discovered by deposition." 777 F. 2d, at 637. In response to the statement of counsel that investigation would have shown that Strickland and Sapp had a motive to commit the robbery, and additionally had reasons to throw suspicion on petitioner, the Court of Appeals found this "insufficient to [create] 'a reasonable probability' of reasonable doubt respecting guilt." *Id.*, at 636.

## III

I continue to believe that "a showing that the performance of a defendant's lawyer departed from constitutionally prescribed standards requires a new trial regardless of whether the defendant suffered demonstrable prejudice thereby." *Strickland*, 466 U. S., at 712 (MARSHALL, J., dissenting). Even under the prejudice standard, however, the facts disclosed by the record demonstrate that petitioner is entitled to relief. As the Court recognized in fashioning the prejudice standard, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*, at 696. The dissent in the Court of Appeals correctly characterized this case:

"Petitioner was convicted on the basis of evidence that was far from strong. No physical evidence implicating Aldrich was

recovered at the scene of the killing. While in custody, Aldrich made no statements resembling a confession. The only direct evidence implicating Aldrich was testimony from a convicted felon who had violated the terms of his parole and lied to police investigators, and who was the other most likely suspect in the crime." 777 F. 2d, at 642 (Johnson, J., dissenting).

Petitioner's life rested on the outcome of the jury's estimation of the relative credibility of petitioner and Charles Strickland. Yet because of the absence of preparation time, petitioner's counsel had not interviewed the witnesses whose testimony might bear on the credibility of Strickland's story. Even more importantly, counsel had not exercised his state-law right to take Strickland's deposition. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, at 686. In a case as closely balanced as this one, I believe we can have no confidence in the result where counsel's inadequate preparation precluded the vigorous testing of the evidence upon which the State proposed to forfeit a man's life.

I would grant the petition for certiorari.