**Alphonso CAVE, Petitioner–Appellee, Cross–Appellant,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent–Appellant, Cross–Appellee.**

No. 90–3959.

United States Court of Appeals, Eleventh Circuit.

Aug. 26, 1992.

**1514**

Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, Fla., for appellant.

Andres J. Valdespino, Valdespino & Karambelas, White Plains, N.Y., Bruce M. Wilkinson, Fields, Wilkinson & Rifkin, Stuart, Fla., for appellee.

Before KRAVITCH, HATCHETT, and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

This appeal arises from a habeas corpus proceeding in the District Court for the Middle District of Florida in which Petitioner Alphonso Cave, convicted of murder and sentenced to death, raised thirteen claims for relief. The district court held an evidentiary hearing on Petitioner's claim of constitutionally ineffective assistance of trial counsel. The court granted relief on the claim of ineffective assistance of counsel during the sentencing hearing, but denied the claim relating to the guilt phase. The State of Florida appeals the district court's grant of a new sentencing hearing; Cave cross-appeals the district court's denial of a new trial. We affirm the district court.

I. FACTS AND PROCEDURAL HISTORY

Cave and three other men robbed a convenience store and kidnapped Frances Slater, an employee, in April, 1982. Slater was shot in the head and stabbed in the abdomen and subsequently died. The medical examiner later determined that the bullet to the head caused her death. The men were tried separately and Cave was convicted of first-degree murder, armed robbery, and kidnapping. Consistent with the jury's recommendation, the trial judge sentenced Cave to death. The Florida Supreme Court affirmed in *Cave v. State*, 476 So.2d 180 (Fla.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986). Cave petitioned the trial court for post-conviction relief under Florida Rule of Criminal Procedure 3.850, raising twelve claims. The trial court ruled that eleven of the claims were procedurally barred, and considered only the claim of ineffective assistance of counsel, which it then denied. The Florida Supreme Court affirmed in *Cave v. State*, 529 So.2d 293 (Fla.1988).

Cave then filed his petition for habeas corpus relief under 28 U.S.C. § 2254, presenting thirteen claims for relief. The district court granted a stay of execution on July 5, 1988 to consider the claims.[1]

The district court determined that the Florida Supreme Court had ruled the *Caldwell* claim procedurally barred and denied federal review. The court ruled that claims (2) through (5), and (7) through (13) were groundless and denied them without an evidentiary hearing. We affirm those rulings on the basis of the district court's opinion. *See Cave v. Dugger*, No. 88–977–CIV–T–15B, August 3, 1990 [hereinafter "District Court Order" or "Order"], attached hereto as Appendix.

The district court held a three-day evidentiary hearing on Petitioner's claim of ineffective assistance of counsel in both the guilt and sentencing phase. In a thorough and well-reasoned order, the district court applied the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and concluded that Petitioner had received ineffective assistance of counsel in both phases, but that he had suffered prejudice only at sentencing. The court thus refused to vacate the con-

viction for first degree murder, but ordered the State to hold a new sentencing hearing.

The State appeals both the district court's decision to hold a hearing and the court's conclusion that the petitioner was prejudiced by the denial of constitutionally adequate counsel during the penalty phase. Petitioner, on the other hand, contends that the evidence of his guilt was not so overwhelming that counsel's proven incompetence did not prejudice him.

## II. ANALYSIS

■ The essence of Cave's claim of ineffective assistance of counsel is that his appointed counsel, Karen Steger, did not understand the elements of felony murder and thus could not, and did not, defend him adequately at his trial. Specifically, Cave contends that Steger did not understand that emphasizing Cave's admission of guilt in the robbery, which resulted in the victim's death, would lead to a conviction for first degree murder under Florida's felony murder statute, regardless of the fact that Cave did not shoot Slater. Further, Cave contends that Steger was so convinced that she would win an acquittal for her client that she failed to prepare for the sentencing hearing.[2] Cave argues that his coun-

---

1. Cave claimed that: (1) the trial judge misled the sentencing jury regarding its ultimate responsibility for the sentence, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (2) the trial court impermissibly shifted the burden of proof to the petitioner to demonstrate that the mitigating circumstances outweighed the aggravating circumstances; (3) the trial court incorrectly informed the jury that in order to recommend a life sentence it must return a verdict by a majority vote; (4) the jurors were obviously confused by their instructions, therefore, under *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), the trial court should have questioned them regarding their understanding of the requirements for a recommendation of a life sentence; (5) the prosecution improperly suggested to the jury during its closing argument at trial and in its argument during the sentencing phase that Petitioner shot the victim, despite the fact that the prosecution knew otherwise; (6) Petitioner's appointed counsel rendered ineffective assistance during the guilt and sentencing phases of the trial; (7) his right to a fair and impartial jury under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), was violated when the trial court

excluded two jurors for cause because they stated that their opposition to the death penalty would not permit them to apply the law impartially; (8) under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the trial court erroneously admitted hearsay statements regarding a codefendant's statement incriminating Cave; (9) his confession was involuntary and coerced; (10) the trial court erroneously refused to give a mitigating instruction to the jury that Petitioner was a "minor" participant in the crime; (11) the trial court erroneously allowed the State to offer as an aggravating circumstance that the murder was "heinous, atrocious, and cruel"; (12) his death sentence is invalid because the State did not prove that he intended to kill the victim; (13) Florida Rule of Criminal Procedure 3.850 violated his due process rights because his time to file his postconviction requests for relief was accelerated by thirteen days.

2. We note that Cave made a number of other claims of ineffective assistance that rely on less fundamental errors: failure to solicit Cave's testimony during the suppression hearing regarding his claim that he had been threatened into confessing by one of the arresting police offi-

sel's incompetence prejudiced him both during the guilt and the sentencing phases.

This appeal and cross-appeal present two distinct issues: first, whether the district court erred in conducting an evidentiary hearing on the issue of ineffective assistance of counsel; and, second, whether the court erred in its determination of the merits of the claim.

## A. *The Evidentiary Hearing*

■ A petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to relief. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). If the state court has held a hearing on the claims raised by the habeas petition, the state court's factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Lightbourne v. Dugger,* 829 F.2d 1012 (11th Cir.1987). Although the state trial court and the Florida Supreme Court did determine that Cave received adequate assistance of counsel, this determination is a mixed question of law and fact that is not entitled to a *Lightbourne* presumption of correctness. *Thomas v. Kemp,* 796 F.2d 1322, 1324 (11th Cir.), *cert. denied,* 479 U.S. 996, 107 S.Ct. 602, 93 L.Ed.2d 601 (1986) (citing *Solomon v. Kemp,* 735 F.2d 395, 401 (11th Cir.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985)).

The first question is whether the state court made any factual findings to which the district court should have deferred. The State contends that there is an implicit "state court finding regarding Ms. Steger [sic] unsuccessful attempts to persuade Appellee's mother to testify." Appellant's Brief at 7. The state trial court made no factual findings and the Florida Supreme Court stated only the following:

> We have no way of judging the credibility of these witnesses' contradictory ac-

counts, but do note the following from the record. The mother agreed she had met with trial counsel twice but denied she was asked to testify. *We have no way of resolving this conflict in testimony,* but the burden of proof at this stage rests upon the petitioner.

*Cave v. State,* 529 So.2d at 297 (emphasis added). The opinion then notes that Cave's mother, sister, and aunts were not present at the trial; according to the relatives, however, their absence was due to Steger's advice that they were not needed at the trial.

■ Although state court findings of fact can be inferred from its opinion and the record, *Green v. Zant,* 715 F.2d 551, 557 (11th Cir.1983), they cannot be imagined from thin air. The Florida Supreme Court made no findings of fact concerning the willingness of Cave's relatives to testify that were binding on the district court. Petitioner presented the district court with an unresolved factual issue regarding the failure of counsel to adequately prepare for the sentencing phase by alleging that Steger failed to take advantage of several character witnesses who were prepared to testify at Cave's sentencing hearing. These allegations, if proven, would establish ineffective assistance of counsel in the sentencing phase. The district court therefore was correct to hold an evidentiary hearing to resolve the dispute.

■ The State also contends that the Florida Supreme Court made an implicit factual finding that Petitioner's counsel consciously misstated the law, a strategic choice that, it claims, would enjoy considerable deference under *Strickland.* Thus, the state argues, the district court erred in substituting its findings for the findings of the state tribunal. First, as we noted above, the conclusion that counsel was effective is a mixed question of law and fact that is not entitled to the presumption of

---

cers; failure to properly cross-examine the medical examiner as to his testimony regarding the voiding of the victim's bladder; violation of the rule in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), by allowing the admission of an implicating statement by a co-defendant without the opportunity to confront the co-defendant. The district court ruled that these actions, even if erroneous, did not result in prejudice to the Petitioner. We agree with the district court and affirm the denial of the *Strickland* claims as to these issues on the basis of the district court's order. *See* Appendix at 1523–24.

correctness. *Thomas v. Kemp, supra.* Second, the state trial court made no findings of historical facts that support its conclusion and would be entitled to deference:

> [F]rom the perspective of Karen Steger, Cave's trial counsel, as of the time of trial and sentencing, this Court finds that none of the evidence establishes either prong of the Strickland test. Defendant has woefully failed to establish that counsel's actions were below that of reasonably competent counsel, under prevailing norms, or were so deficient that Cave was deprived of his Sixth Amendment rights.

The State construes this statement to mean that "the state courts implicitly found that Ms. Steger made a decision to misstate the law." Again, we disagree. The state court made no such finding, implicit or otherwise. The district court correctly held an evidentiary hearing to consider *de novo* the issue of ineffective assistance of counsel.

### B. *The Merits*

The Supreme Court established the now-familiar test for determining whether a defendant received constitutionally ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must demonstrate that counsel's "alleged acts or omissions, upon consideration of all the circumstances, fell outside the wide range of professionally competent assistance." *Stano v. Dugger,* 883 F.2d 900, 911 (11th Cir. 1989). Further, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* We review *de novo* the district court's conclusions regarding the determination of effectiveness of counsel, but the court's findings of fact are subject to the clearly erroneous standard. *Aldrich v. Wainwright,* 777 F.2d 630, 632 (11th Cir.1985), *cert. denied,* 479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 297 (1986).

### 1. The Guilt Phase

■ Petitioner's trial counsel does not deny that throughout the trial she emphasized to the jury the fact that Cave committed the robbery. Because of this approach, the state trial court required Steger to proffer her closing argument, parts of which the court rejected as misstatements of law. The sections of the closing that the court permitted demonstrate substantial confusion regarding the law of felony murder:

> I submit to you, ladies and gentlemen, that my client is guilty of armed robbery. He's guilty of it. I submit to you ladies and gentlemen of the Jury, he admitted it, he admitted it.... [A]nd I submit to you ladies and gentlemen, I know you can come back with a guilty verdict for armed robbery. It is not even an issue.

As the district court noted, given the instructions by the state judge on the law of felony murder, Steger's statements amounted to a concession by defense counsel to the jury that the State had proven its case.

Steger, however, contended that she understood the concept of felony murder, but *deliberately* misstated the law throughout the trial in an attempt to confuse the jury. Her strategy, she argued, was to attempt to separate in the jurors' minds the robbery and the murder, then confuse the jury about the elements of felony murder and convince the jury to acquit Cave of the murder charge.

The district court, in its three-day hearing, heard the testimony of Steger, as well as Austin Maslanik and Wayne McDonough, two of her former colleagues. Maslanik testified that he met with Steger the night before her closing argument and that it was his impression that she did not understand the concept of felony murder. Counsel outlined her closing argument to Maslanik and told him that her main argument was that although Cave had confessed to his involvement in the robbery, he had not been the "shooter" and thus could not be found guilty of felony murder. Maslanik testified that he asked her how she intended to deal with the fact that

under Florida law Cave could be found guilty of felony murder if the killing was the result of the robbery. According to Maslanik, Steger merely responded that Cave was not the shooter, so he was not guilty of murder. Maslanik testified that Steger never mentioned to him that she had a strategy to misstate intentionally the law in order to mislead the jury. The district court noted that Steger did not challenge Maslanik's testimony concerning her conversation with him the night before her closing argument; the court found Maslanik, who is a friend of Steger, as well as a former colleague, to be a credible witness.

Wayne McDonough, Petitioner's appellate counsel in the state proceedings, testified that when he met with Steger to discuss appealable issues, she mentioned that one issue was the state judge's requirement that she proffer her closing argument. Cave contends that Steger's belief that the proffer was improper reveals that she believed that her recitation of the law in her closing argument was correct.

Conclusions regarding credibility are within the province of a district court judge, who has the opportunity to observe and analyze witnesses that we, as an appellate tribunal, lack. The habeas court concluded that Steger's testimony was inconsistent and generally lacking in credibility, that she had an unreasonably high opinion of her ability as a lawyer and that rather than adopting a strategy to confuse the jury on the law, she had simply misunderstood the elements of the charges faced by her client. After having reviewed the transcript of the evidentiary hearing, we concur with the findings and conclusions of the district court and agree that Steger's performance fell far below the acceptable standard for competent counsel.

■ Further, we wish to emphasize the district court's observation that the mere incantation of the word "strategy" does not insulate attorney behavior from review. The attorney's choice of tactic must be *reasonable* under the circumstances. *See Lightbourne v. Dugger*, 829 F.2d 1012, 1026 (11th Cir.1987), *cert. denied*, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988).

As we stated last year in *Horton v. Zant*, 941 F.2d 1449 (11th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992), "[t]he question of whether a decision was a tactical one is a question of fact.... However, whether this tactic was reasonable is a question of law, and we owe neither the district court nor the state court any deference on this point." *Id.* at 1462 (citing *Bundy v. Wainwright*, 808 F.2d 1410, 1419–20 (11th Cir.), *cert. denied*, 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987)). Even if counsel's misstatements of the law were strategic in nature, we could not consider such a "strategy" to be reasonable under the circumstances because defense counsel may not "encourage[ ] the jurors to ignore the court's instruction and apply the law at their caprice." *United States v. Trujillo*, 714 F.2d 102 (11th Cir.1983) (holding jury nullification argument improper).

■ We are disturbed by Steger's representation of Alphonso Cave. In particular, we are troubled by the fact that a defendant facing the possibility of execution in Florida's electric chair was defended by counsel who, in the words of the district court, had a "grandiose, perhaps even delusional" belief in her abilities, especially so because she was trying her first capital case. We are convinced that Steger completely misunderstood the law of felony murder, which is a concept that often confuses laypeople, but should be within the grasp of lawyers, especially those defending a client charged with a capital offense. We believe, however, that even a highly competent lawyer could not have won Cave an acquittal. His confession to robbery sealed his conviction for felony murder and Petitioner offers no reason why any other counsel might have succeeded in suppressing Cave's statement. In this case, Cave has not demonstrated that there is a reasonable probability that, but for counsel's incompetence, the result of the trial would have been different. *See Zamora v. Dugger*, 834 F.2d 956, 959 (11th Cir.1987). Hence, we conclude that Cave has failed to comply with the prejudice prong of *Strickland* regarding the guilt phase of his trial.

## 2. The Penalty Phase

Cave argues that Steger was so convinced that she would win an acquittal for her client that she failed to prepare for the penalty phase, which proceeded directly on the heels of the conviction. Steger admitted that she did not present any mitigating witnesses during the sentencing phase, but contended that none of Cave's relatives would agree to testify. The only other potential witnesses, she stated, were unable to testify for medical reasons. Steger testified that she had hired an investigator to find character witnesses, but could not recall what the investigator had done or what he had found.

During the Rule 3.850 hearing and again at the federal evidentiary hearing, Cave produced relatives and friends who asserted that they would have testified at trial on Cave's good character had they been asked to do so. Cave's mother, sister, and one of his three aunts described in detail a meeting with Steger at which each of them offered to testify at Cave's trial and sentencing hearing; instead, however, counsel told them that their testimony would not be needed. Steger denied any personal meeting with any of the relatives and contended that she had no idea that Cave had any aunts.

The district court accepted the testimony of Cave's relatives regarding their willingness to testify and did not find Steger to be credible on this issue. The district court also credited the testimony of Robin Frierson, counsel for one of Cave's codefendants, who testified that when he met with Steger immediately after the conviction, she appeared "frantic" because she was not prepared for the aggravating/mitigating circumstances portion of the penalty phase.

In short, the district court found the absence of witnesses and evidence at the hearing to be a result of lack of preparation rather than any particular strategy or because witnesses were unavailable. After careful review of the transcript of the hearing, we agree with the district court that Steger's performance was constitutionally inadequate.

■ The district court concluded that Cave was prejudiced by Steger's ineffectiveness because there was a reasonable probability that the outcome of the penalty phase would been different if counsel had presented the available character witnesses and introduced the fact that Cave had no prior criminal record.[3] Steger's failure to present any witnesses at the sentencing hearing allowed the prosecutor to emphasize Cave's lack of redeeming character during the State's closing argument:

> What have we learned regarding the Defendant's character? Absolutely nothing. What witnesses appeared during the second phase to testify regarding the Defendant's character? None. Of all the persons that Alphonso Cave knows, what person told you anything regarding Alphonso Cave's character? None.

However, despite this statement and the lack of preparation on counsel's part, five jurors voted for a life sentence. In Florida, a vote of six jurors for life constitutes a recommendation against the death penalty. Thus, despite the presentation of no mitigating circumstances, Cave came within one vote of being spared execution. There is a reasonable probability that if Steger had provided adequate representation, her client would not have received a death sentence.

## III. CONCLUSION

The representation provided to Cave by the State of Florida constitutes an embarrassment to the legal profession. However, we have found no evidence of preju-

---

**3.** Steger originally requested a charge of no significant prior criminal activity as a mitigating circumstance but withdrew the request when the State indicated that in rebuttal it would present evidence of an alleged rape charge in Pennsylvania. As the district court noted, however, it was probable that the state court would not have admitted evidence of an unadjudicated charge that even the prosecutor admitted was unsubstantiated. Further, Steger's testimony on this point was inconsistent. She originally testified during state proceedings that the state trial court had refused her request for such a mitigating instruction, but acknowledged to the district court that the trial judge had not made such a ruling.

dice in the conduct of the guilt phase because it is highly unlikely that the result of the trial would have changed even if his counsel had understood the law of felony murder. Our conclusion regarding the penalty phase, however, is different. Competent counsel would have prepared for sentencing and would have produced witnesses that the district court found were ready and willing to testify for Cave. Even without this evidence the sentencing jury came within one vote of recommending life imprisonment. Petitioner has demonstrated prejudice such that our confidence in the sentence of death is greatly undermined. We therefore affirm the district court's order denying relief on the conviction and granting the writ of habeas corpus as it relates to sentencing.

AFFIRMED.

### APPENDIX

United States District Court

Middle District of Florida

Tampa Division

Alphonso Cave,

Petitioner,

v.

Richard L. Dugger,

Secretary, Florida Department

of Corrections,

Respondent.

Case No. 88–977–CIV–T–15B

### ORDER

This is a habeas corpus proceeding initiated pursuant to 28 U.S.C. § 2254 by a state prisoner under sentence of death. It is the first federal petition filed by Petitioner, and this Court granted a stay of execution on July 5, 1988 so that it might consider Petitioner's claims.

The petition presents thirteen claims for relief, and Petitioner has presented supporting memorandum on six of these claims. On February 15, 16, and 17, 1989, the Court held an evidentiary hearing on Petitioner's claim of ineffective assistance of counsel. The Court has determined that the remaining claims may be resolved upon consideration of the memoranda submitted by the parties.

### I

The Petitioner's first claim is based upon *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), which held that it is constitutionally impermissible under the Eighth and Fourteenth Amendments for a state to mislead a sentencing jury as to their ultimate responsibility regarding the sentence issued. Although in Florida the sentencing jury acts in an advisory capacity only, and the trial judge may or may not adopt the jury's recommendation, Eleventh Circuit law is clear that *Caldwell* applies to the Florida sentencing scheme. Thus it is constitutional error if a Florida jury is led to believe that responsibility for a death sentence lies in the trial judge. *Mann v. Dugger*, 844 F.2d 1446, 1457 (11th Cir.1988), *cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989); *Harich v. Dugger*, 844 F.2d 1464, 1474 (11th Cir.1988), *cert. denied* 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989).

However, Petitioner is barred from raising his *Caldwell* claim in this action. In *Dugger v. Adams*, 489 U.S. 401, 407, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989), the United States Supreme Court held that to establish a *Caldwell* violation, a petitioner necessarily must assert that the prosecutor's and trial court's remarks violated Florida law. Thus petitioner would have had a basis for an objection at trial and an argument on appeal regarding an error of state law. In *Adams* the petitioner did not object to the remarks at trial or challenge them on appeal, and was barred by Florida law from raising the issue in a later state proceeding. The *Adams* Court held that the petitioner was thus barred as well from raising the claim in a federal habeas corpus petition.

In the case before this Court, the Florida Supreme Court specifically applied a proce-

dural bar to Petitioner's *Caldwell* claim as a claim that should have been brought on direct appeal. Pursuant to the *Adams* decision then, this claim is similarly barred from review by this Court. Accordingly, this claim is denied. .

## II

Petitioner's second claim is that the sentencing jury was incorrectly instructed that a mathematical count could be used for balancing the factors and that the mitigating circumstances had to outweigh the aggravating circumstances in order to recommend a life sentence. Petitioner points to the following instructions by the Court as impermissibly shifting the burden of proof to the petitioner to demonstrate that the mitigating circumstances outweighed the aggravating circumstances:

> You are instructed that this evidence, when considered with the evidence you have already heard is presented in order that you might determine first whether there are sufficient aggravating circumstances that would justify the imposition of the death penalty and secondly whether there are mitigating circumstances, if any. (ROA: 2921–22—verbal charges).

The trial court then instructed, prior to deliberation:

> Now, if you find the aggravating circumstances do not justify the death penalty, your advisory sentence should be one of life in prison without possibility of parole for 25 years. Should you find sufficient aggravating circumstances do exist it will then be your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances, and among the mitigating circumstances you may consider if established by the evidence, are any aspect of the defendant's character or record, and any other circumstances of the offense. . (ROA: 2948–49).

Petitioner argues that the effect of the above instructions was to place the burden on petitioner to demonstrate that he should receive a life sentence.

However, the above cited instructions were not the only instructions issued by the court to the jury. The court goes on to instruct the jury:

> Now, each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision.
>
> If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances, and give that evidence sufficient weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.
>
> Now, a mitigating circumstance need not be proved beyond a reasonable doubt by the Defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as established. (ROA: 2949).

Thus, the court in the above instructions makes clear that the burden is on the State to establish beyond a reasonable doubt the existence of an aggravating circumstance, while the defendant need only "reasonably convince" the jury that a mitigating circumstance exists. In examining the totality of the instructions given by the trial court, the Court finds then that no improper shifting of the burden of proof occurred, and Petitioner's second claim is denied.

## III

In his third claim Petitioner argues that the trial court's instructions to the jury that in order to recommend a life sentence its verdict must be by a majority vote is an incorrect statement of the law and thus violated Petitioner's rights.

Petitioner is correct that a six-six vote on the part of the jury is a recommendation for a life sentence. *Rose v. State*, 425 So.2d 521 (Fla.1982), *cert. denied* 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). Petitioner is also correct that the trial court incorrectly instructed the jury that a majority vote was required to recommend either a death or life sentence. However, the trial court went on to instruct the jury that

if by six or more votes the jury determines that Alphonso Cave should not be sentenced to death your advisory sentence will be: The Jury advises and recommends to the Court that it impose a sentence of life imprisonment upon Alphonso Cave, without the possibility of parole for twenty-five years. (ROA: 2951 (verbal instructions); ROA 312 (written instructions).

Petitioner argues that despite the above instruction, the totality of the instructions left the jury with the impression that it was required to reach a majority as to either recommendation.

The Court finds that any confusion by the jury was corrected by the trial judge's response to the following note submitted to the court by the jury after it had begun its sentencing deliberation:

We are at a split decision. We would like it stated and published to the Court of this advisory sentence. The current form does not allow for this revelation. Please advise. Thank you, the Jury.

The trial court announced that its proposed written response to the jury would be:

Under the instructions I have given you, if by six or more votes the jury determines the defendant should not be sentenced to death, your advisory sentence would be: the jury advises and recommends the Court that it impose a sentence of life imprisonment upon the defendant without possibility for parole for 25 years. (ROA: 2955–56)

The Court finds that when the above note correctly stating Florida law was delivered to the jury, any potential confusion was corrected. Without further questions to the court, and with correct knowledge of the law, the jury resumed its deliberations and subsequently returned a recommendation of death by a 7–5 vote. The jurors were individually polled to verify this vote (ROA 2957–60), and apparently no claims of confusion were raised by the individual jurors.

Petitioner argues in his motion to supplement that because the State, in the subsequent trial of Petitioner's codefendant, requested a different jury instruction to avoid the confusion of the Cave trial, his claim must be granted. Petitioner has filed a portion of the transcript of the codefendant's trial in which the prosecutor, in referring to Petitioner's trial, states "[the jury] came out with a question saying they were deadlocked six to six and there was no verdict form for them, there was nothing to show for it. But in the meantime when we sent back and told them to give life, they took another vote and it was seven to five."

The prosecutor's statements in another trial cannot be considered as relevant evidence in this Court's consideration. The prosecutor, in hindsight, decided to take particular precautions regarding the instructions. His statements can be viewed only as speculation as to the nature of the jury's split decision in Petitioner's trial and do not change the fact that prior to delivering its verdict the jury was properly instructed on Florida law. Therefore, the Petitioner's third claim is denied.

IV

Petitioner argues in his fourth claim that because of the obvious jury confusion, his right to a fair trial was violated by the trial court's refusal to question the jurors regarding their understanding of the requirements necessary for a recommendation of a life sentence. Petitioner relies on the Supreme Court decision *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) for the proposition that the trial court should have sought extrinsic evidence of what the jury actually thought. In *Mills*, the Supreme Court reviewed the jury instructions and verdict forms issued to a sentencing jury, and concluded that "there is a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." *Id.* at 384, 108 S.Ct. at 1870.

As discussed above, any potential confusion was corrected by the trial judge's re-

sponse to the jury's question regarding their split decision, and later by the judge's individual polling of the jurors regarding their votes. Thus, unlike the scenario in *Mills,* following delivery of the note, this Court cannot find that a reasonable jury could have misinterpreted the note's instruction. The trial court clearly set forth that if the jury found that by six or more votes the defendant should not be sentenced to death, its recommendation should be a sentence of life. Therefore, it was unnecessary for the trial court to question the individual jurors further regarding their decision, and Petitioner's claim is denied.

## V

Petitioner claims that the prosecution improperly suggested to the jury during its closing argument at trial and in its argument during the sentencing phase that Petitioner shot the victim, despite knowledge otherwise. Petitioner cites various statements by the prosecution team which he asserts suggest to the jury that he shot the victim even though the state presented no evidence during trial to support that suggestion.

Again, the statements cited by Petitioner must be examined in the context of the prosecution's closing argument in its entirety. During the state's closing argument in the guilt phase, the prosecutor tells the jury:

And I submit to you that regardless of whether Alphonso Cave pulled the trigger or used the knife, he's just as guilty as who did. He was there. He was involved. And the only statement you have that he didn't pull the trigger was his own self-serving statement, that after he heard Bush's statement implicating him, "I better make the best possible statement now on my own behalf"—he's the only one at that point that tells you he didn't pull the trigger.
Who had the gun from the beginning? Alphonso Cave. Who had the gun in the store? Alphonso Cave. Who put her in the back seat? Alphonso Cave. Who

took her out of the back seat? Alphonso Cave. Who had the gun? And who was outside with Frances Slater? Alphonso Cave. (ROA 2813–15).

The above statement does not argue that Petitioner should be found guilty because he shot the victim. Instead it suggests that although the evidence is not clear as to who actually shot the victim, the jury may pursuant to felony murder law convict Petitioner even if he did not pull the trigger. This portion of the prosecution's closing reflects the overall theme of the prosecution's closing—that all participants in an underlying felony may be held responsible for the death of the victim.

The Court then finds that there was no improper suggestion by the State in its closing argument, and Petitioner's fifth claim is denied.

## VI

The Court held an evidentiary hearing on Petitioner's claim of ineffective assistance of his court appointed counsel Karen Steger. Counsel have submitted post-hearing memoranda to supplement the originally filed briefs on this claim. Petitioner contends that Ms. Steger's representation was ineffective during both the guilt and sentencing phases of his trial.

The Court's analysis of a claim of ineffective assistance of counsel must begin with the standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To be successful on his claim, Petitioner must demonstrate first that Ms. Steger's performance was deficient because it fell below an objective standard of reasonableness. *Id.* at 690, 104 S.Ct. at 2066. Secondly, Petitioner must establish that he was prejudiced by his counsel's errors—that is, but for counsel's inadequate performance, the result of the trial and sentencing would have been different. *Id.* at 692, 104 S.Ct. at 2067.

Petitioner argues first that counsel's failure to solicit petitioner's testimony during the suppression hearing regarding Petitioner's claim that he had been threatened into confessing by one of the arresting police

officers, was prejudicial error since it might have led to suppression of the confession. Ms. Steger explained that she did not explore this threat since it would only result in a "swearing match" between Petitioner and the police officer. Instead, Ms. Steger elicited testimony regarding the generally coercive environment surrounding Petitioner's confession. However, on cross examination by the State, Petitioner testified concerning the alleged threat in response to the State's question regarding the circumstances surrounding his confession. Therefore, even if Ms. Steger's strategy is considered unreasonable, there was no prejudice because the alleged threat was stated by Petitioner on the record for the judge to consider in his determination that the confession was legally obtained.

Petitioner claims also that Ms. Steger failed to properly cross-examine the medical examiner as to his testimony regarding the voiding of the victim's bladder. Petitioner contends that a proper cross-examination would have produced rebuttal testimony to the state's contention that the voiding was due solely to the victim's fear, a contention that was referred to by the state in its closing argument, and later by the judge during the sentencing phase.

However, as the State maintains, Ms. Steger's decision not to reinforce the medical examiner's testimony by cross examination, testimony which could not have been completely eliminated by another theory, was reasonable. Additionally, a review of all the facts presented to the jury reveals that there was other testimony which established the victim's fear, such as Petitioner's statement to the police regarding the victim's pleas for her life (ROA 2717), and the medical examiner's testimony that the victim's stab wound was consistent with a defensive posture (ROA 2619). Thus, even if Ms. Steger's decision could be viewed as erroneous, Petitioner was not prejudiced.

Petitioner raises also an alleged violation by counsel of the rule set forth in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which prohibits implicating statements by co-defendants unless the defendant has the opportunity to confront the co-defendant. During Petitioner's trial, the State attempted to introduce into evidence a statement made by one of Petitioner's co-defendants to the testifying police officer. Ms. Steger stated a limited objection to this statement—she requested that the state's question be limited to whether or not the co-defendant had "implicated" Petitioner. The judge sustained the objection, and the officer subsequently testified that the co-defendant had indeed implicated Petitioner as one of the people involved in the robbery.

However, even if the Court found that Ms. Steger's limiting of her objection was error pursuant to *Bruton,* the jury had already heard Petitioner's confession in which he admitted taking part in the robbery. Thus, no prejudice occurred by counsel's failure to object to the entire statement.

Petitioner's primary claim of ineffective assistance relies on his assertion that Ms. Steger misunderstood the law of felony murder, a misunderstanding which prejudiced Petitioner since Ms. Steger proceeded to try the case under an inherently erroneous theory of defense. Petitioner supports this allegation with the fact that in her closing argument during the guilt phase of the trial, Ms. Steger stated to the jury the following:

It's frightening, ladies and gentlemen, It is very frightening to think that there is no evidence, no independent evidence whatsoever and there is no evidence that my client committed first-degree murder. The State has admitted to you, they have talked to you about, we admit that Alphonso Cave didn't shoot her, he didn't stab her And I told you he robbed the girl. Find him guilty of armed robbery. But by golly, find him not guilty of what he's not guilty of, and that's first degree murder. (ROA: 2803).

This argument suggests to the jury that it render a legally impossible verdict. Under Florida felony murder law, a defendant convicted of a felony may also be convicted of any deaths which occur as a result of the felony. Indeed, the State objected to

Ms. Steger's later attempts to separate the charges of the indictment, when she said:

I submit to you, ladies and gentlemen of the Jury, the State of Florida has admitted by their charging instrument there are three distinct offenses. ROA: 2836.

The judge sustained the objection, and directed Ms. Steger to proffer the remainder of her closing. The court found parts of the proffered closing unacceptable, and admonished Ms. Steger not to misstate the law. (ROA: 2836–2846).

In further support of petitioner's claim, he points to the testimony of two witnesses at the evidentiary hearing. Ms. Steger's former colleague Austin Maslanik testified that he met with Ms. Steger the night before her closing argument, and that it was his impression that she did not understand the concept of felony murder. Ms. Steger indicated to him that her main argument in closing was that although petitioner had confessed to his involvement in the robbery, he had not been the "shooter" and thus could not be found guilty of felony murder. Mr. Maslanik testified that he asked her how she was planning on dealing with the fact that under felony murder law if the killing was the result of the robbery, Petitioner could be found guilty. According to Mr. Maslanik, Ms. Steger's response was that Cave was not the shooter so he was not guilty of murder.

Wayne McDonough, Petitioner's appellate counsel in the state proceedings, testified that when he met with Ms. Steger to discuss appealable issues, Ms. Steger mentioned that one issue was the judge's incorrect requirement that she proffer her closing argument. Petitioner asserts that Ms. Steger's belief that her proffer was an appealable issue reveals that she felt her recitation of the law in her closing argument was correct. Petitioner argues that the testimony of Mr. Maslanik and Mr. McDonough suggests that Ms. Steger never comprehended the charges against her client, and proceeded through the trial under the mistaken impression that despite petitioner's confession to the robbery, he could still be acquitted.

Ms. Steger testified at the evidentiary hearing that she understood the law of felony murder but deliberately misstated it during her closing in an attempt to confuse the jury. This purposeful misstatement was consistent with her theory throughout the trial—to attempt to separate in the jurors' minds the robbery and the murder, and then to attempt to confuse the jury on the law regarding felony murder so that the jury would acquit Petitioner. The State argues that this was an acceptable theory of defense because Ms. Steger was trying to establish reasonable doubt by taking advantage of the difficulty lay persons often have in comprehending felony murder.

The Court finds that there is sufficient evidence to support Petitioner's claim that his counsel was confused about and misunderstood a fundamental legal concept—felony murder—and constructed a theory of defense based on her erroneous belief that since there was evidence to suggest that Petitioner had not actually killed the victim, he could be acquitted of murder. The Court bases its finding primarily on Ms. Steger's testimony before this Court, as well as the testimony of other witnesses.

Ms. Steger presented herself to this Court as an attorney who was much impressed with her own abilities in the courtroom. For example, several times during her testimony, she reiterated such statements as "I am good," and "everybody knew that if anybody could get away with this case I could...." While the Court does not condemn confidence—indeed that is often a necessary trait in a successful trial attorney—Ms. Steger's belief in her abilities seems grandiose, perhaps even delusional, especially since she was trying her first capital case.

Ms. Steger's inflated ego appears to have led her to focus more on how she looked and interacted with her client then on whether she understood the charges and could effectively argue the law. Ms. Steger testified that an important part of her defense involved the fact that because she was a young-looking white female who did not appear afraid to interact with a black

client, she would be able to invoke sympathy from the jury. While a jury's perception of an attorney is important, it certainly is not reasonable for an attorney to place significant reliance on a possible "look" as a method of defending criminal defendants.

The Court bases its rejection of Ms. Steger's and the State's contention that her attempts to separate the elements of felony murder was a deliberate strategy on several factors. First, as discussed above, Ms. Steger's overconfidence appears to have blinded her as to the law. This is supported by her former colleague Mr. Maslanik's testimony that Ms. Steger was convinced that she could win the case based on petitioner's lack of participation in the actual murder. Mr. Maslanik testified that when he met with Ms. Steger the night before her closing argument she never mentioned to him that she had an intentional strategy to misstate the law of felony murder. Ms. Steger did not challenge Mr. Maslanik's testimony concerning her conversation with him, and the Court finds Mr. Maslanik, who is also a friend of Ms. Steger, a credible witness.

The Court finds persuasive also the fact that according to Mr. McDonough, Ms. Steger felt the judge's direction to proffer her closing argument was appealable error. The transcript of the trial reveals that Ms. Steger appeared extremely upset after the judge refused to accept her proffer. She stated, "Well, Judge, I don't know what you want me to do. All I've left out is one word "accomplice" and I'll put it in, Judge. I don't know what else I can do." (ROA: 2844). Ms. Steger appears genuinely confused as to why the judge will not accept her proffer. If she had planned as strategy to misstate the law, it seems reasonable that Ms. Steger would have been prepared for the possible objection and proffer. Indeed, given Ms. Steger's testimony that the state attorney trying the case was a talented and formidable opponent, she should not have been surprised that the State would object to her closing.

The parts of the closing argument that the court permitted also demonstrate Ms. Steger's confusion regarding felony murder. Ms. Steger stated in part:

> I submit to you, ladies and gentlemen, that my client is guilty of armed robbery. He's guilty of it. I submit to you ladies and gentlemen of the Jury, he admitted it, he admitted it.... (ROA: 2852).
>
> ... and I submit to you, ladies and gentlemen, I know you can come back with a guilty verdict for armed robbery. It is not even an issue. (ROA: 2854).

Given the instructions by the judge on the law of felony-murder, Ms. Steger's statements amount to a concession by defense counsel to the jury that the state has proven its case of first degree murder. Again although Ms. Steger and the state argue that these statements in her closing were deliberate, the Court views such statements as further evidence of Ms. Steger's misunderstanding of felony murder.

The first prong of the *Strickland* test places on the petitioner the burden of demonstrating that his counsel's representation fell below an objective standard of reasonableness. The Court finds that Ms. Steger's failure to understand the law of felony-murder, the law which governed the charges against her client, is below the reasonable standard of representation. Indeed, even if the Court accepted the argument that the misstatements of law were deliberate, again, the Court could not find that a theory of defense built around an attempt to deliberately misstate the law is reasonable representation.

Despite the Court's finding that Ms. Steger misunderstood the law of felony-murder, the Court cannot find that Petitioner was prejudiced by this error. *Strickland* mandates that defendant must show that despite the errors of counsel, the outcome of the trial would have been different. Petitioner had confessed to his participation in a robbery which led to the victim's murder. Unless a reasonable attack could have been launched against the credibility of this confession, a jury would have strong evidence to convict Petitioner of felony murder.

The Court does find that counsel's misunderstanding of the law and overconfidence

in her ability did lead to prejudice during the sentencing phase of Petitioner's trial because she failed to adequately prepare for the sentencing phase. As she testified at the hearing before this Court, she was so convinced that she would obtain an acquittal that her "strategy" did not call for witnesses. Even if her belief is well-founded, it is not an acceptable excuse for failure to prepare for the penalty phase. *Blake v. Kemp*, 758 F.2d 523 (11th Cir.), *cert. denied* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985).

As a result of her misguided belief that she would obtain an acquittal, Ms. Steger subpoenaed no witnesses for the penalty phase. She testified to this Court that she had contacted Petitioner's mother Connie Hines by telephone, but Ms. Hines refused to testify. Additionally, petitioner had provided Ms. Steger with the names of his landlords, but they were an elderly couple who indicated to her that because of illness they would be unable to travel to the court to testify. Ms. Steger contends that she had the best investigator she could find, but he failed to provide the names of any other possible witnesses. However, this lack of witnesses did not trouble Ms. Steger because, as she stated to this Court, her theory did not require witnesses.

The testimony of other witnesses at the hearing contradicts Ms. Steger's representations regarding her penalty phase efforts. At the evidentiary hearing Petitioner's mother Connie Hines testified that she and her two sisters met in person with Ms. Steger, and that Ms. Steger informed her she would not have to testify. This meeting was verified by Ms. Hines' sisters, Emma Andrews and Patricia Young, who also attended the meeting at Ms. Steger's office in Stuart, Florida. Both Ms. Andrews and Ms. Young testified that they offered to participate in the trial, but were told by Ms. Steger that they were not needed.

Ms. Steger denies any personal meeting with Ms. Hines, Ms. Andrews, and Ms. Young. As a matter of fact, Ms. Steger testified that she had no idea that Petition-er had any aunts. The Court does not find Ms. Steger's testimony on this matter credible. Ms. Hines and the aunts each described Ms. Steger's office in some detail, and their descriptions were verified by Ms. Steger's own recollection of the physical appearance of her office at the time. Secondly, if one accepts Ms. Steger's representation that she had the best investigator around, it seems strange that this investigator was unable to locate Petitioner's aunts.

Ms. Steger also did not present at the sentencing phase any mitigating circumstances. At the last minute she withdrew her requested instruction of no significant prior history of criminal activity when she learned that the State would attempt to rebut the charge with evidence of an alleged rape charge in Pennsylvania. However, if Ms. Steger had adequately prepared for the hearing, she would have been able to challenge the use of the unadjudicated charge, and found that, as prosecutor Robert Stone testified at the hearing before this Court, the State had no actual evidence of the rape charge at the time of the sentencing. Thus, if Ms. Steger had challenged such evidence, the State probably would not have been able to use it in rebuttal. Investigation into a client's prior record is expected of competent counsel. *Harrison v. Jones*, 880 F.2d 1279, 1281 (11th Cir.1989). Ms. Steger has demonstrated no valid tactical reason for her failure to properly investigate mitigating evidence, and as a result her performance at the sentencing phase fell below the acceptable standard for competent counsel. See *Middleton v. Dugger*, 849 F.2d 491, 494 (11th Cir.1988).

Ms. Steger's lack of preparation in the sentencing phase is confirmed by Robin Frierson, counsel for one of Petitioner's codefendants, who had attended Petitioner's trial. Mr. Frierson testified that when he met with Ms. Steger following the jury's conviction of Petitioner, she appeared "frantic." Mr. Frierson was left with the impression that Ms. Steger had not adequately prepared for the aggravating/mitigating circumstances portion of the penalty phase, because she was so confident that

she would secure an acquittal for Petitioner and there would be no penalty phase.

Most importantly, Ms. Steger's testimony throughout these proceedings has been unreliable and inconsistent. For example, at the state court hearing on petitioner's habeas claim, Ms. Steger testified that she had solicited on direct examination at the suppression hearing Petitioner's allegations concerning coercive threats. (State Court hearing at 122). However, at the hearing before this Court, Ms. Steger conceded that she had not conducted such a direct examination, and her conclusion is supported by the trial record. (ROA 2082–85). Additionally, Ms. Steger testified at the state proceedings that the judge had refused her request for an instruction on no significant criminal activity. (State Court hearing at 150–51). She testified to this Court that the trial judge had not made such a ruling. (II, 210). Based on such inconsistencies, as well as this Court's careful observations of Ms. Steger during her testimony before this Court, the Court finds that Ms. Steger's performance on behalf of petitioner at the sentencing phase was not based on strategy, but was a result of inadequate preparation.

The Court finds that Ms. Steger's lack of preparation prejudiced Petitioner during the sentencing phase of the trial. First of all, if she had adequately prepared, she would have realized that Petitioner had no prior criminal record, and that the State's proposed rebuttal evidence would not have been admissable on rebuttal. Instead, Ms. Steger simply withdrew her request for a charge of no significant prior criminal activity as a mitigating circumstance.

Secondly, as stated above, Ms. Steger presented no witnesses at the penalty phase on behalf of Petitioner. The lack of witnesses prompted the prosecutor to argue in his penalty phase closing argument:

What have we learned regarding the Defendant's character? Absolutely nothing. What witnesses appeared during the second phase to testify regarding the Defendant's character? None. Of all the persons that Alphonso Cave knows,

what person told you anything regarding Alphonso Cave's character? None. (Trial transcript at 2935).

Despite this statement, five jurors voted for a life sentence. The Court finds that the outcome of the penalty phase may well have been different if Ms. Steger had presented character witnesses such as Mrs. Hines, Ms. Andrews, and Ms. Young. They would have testified regarding Petitioner's family life and employment, and shown that someone did "care" about Petitioner.

Having found that Petitioner's trial counsel's performance was deficient, and that because of these deficiencies that there is a reasonable probability that the outcome of the penalty phase would have been different, Petitioner's claim of ineffective assistance of counsel is granted as to the penalty phase of the trial, and denied in all other respects.

### VII

Petitioner in his seventh claim alleges that his right to a fair and impartial jury was violated when the trial court excluded two jurors for cause because they stated that their opposition to the death penalty would not permit them to apply the law impartially. Petitioner argues that the trial court should have inquired whether the two jurors' opposition to the death penalty would prevent them from convicting Petitioner during the guilt phase. See *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

A review of the record on appeal reveals that the trial court's initial questioning of the venire panel demonstrated that the two jurors were properly excused pursuant to *Witherspoon*. The trial court asked the panel whether

... any juror have such a belief as to capital punishment, either for or against, that you could not or you would be reluctant to or you would even hesitate to find the Defendant guilty of the offense in the first trial—that is, guilty of first degree murder—if so proven to the exclusion of every reasonable doubt by the State of Florida that the Defendant is

guilty of first-degree murder? Does any juror have such an opinion? (ROA 2179).

Juror Bennett, in response to further questioning by defense counsel, stated that he would be unable to render a guilty verdict knowing that a first degree murder conviction carries with it the possibility of a death sentence. (ROA 2263–64). Similarly, Juror Black, upon questioning by defense counsel stated that he would also be unable to convict during the guilt phase because of his views regarding the death penalty. Black went on to state that he could not "go along morally with taking a life, no matter whose life it is." (ROA 2388).

Based on these responses, the Court finds that jurors Bennett and Black were properly excused for cause, and Petitioner's seventh claim is denied.

### VIII

In Claim VIII, Petitioner alleges that the trial court violated *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) when it permitted introduction of testimony of a co-defendant. As discussed above in Petitioner's ineffective assistance claim, defense counsel objected to this testimony after the following answers by the state's witness:

Q. Did John Earl Bush make a statement implicating Mr. Cave?

A. Yes, sir, he did.

.    .    .    .    .

Q. Only as it relates to Mr. Cave, what did Mr. Bush say about Mr. Cave?

A. He just stated that he was with him the night of the crime, sir, basically, is what he said.

.    .    .    .    .    .

Q. Did he implicate that Mr. Cave was there?

A. Yes, sir.

Q. And that he did participate?

A. Yes, sir.

.    .    .    .    .

Q. Okay. When you played John Earl Bush's statement, did John Earl Bush tell you it was Cave's knife that was used?

Defense counsel objected to the last question, the Court sustained the objection, and instructed the jury to disregard it. Thus Bush's actual statement was not introduced at trial. The Court finds that assuming that the hearsay testimony by the police officer should not have been admitted, the two items the officer testified about, that Cave was present and participated in the crime were already known to the jury through Cave's confession. Therefore the officer's testimony is harmless error and Petitioner's eighth claim is denied.

### IX

As to Petitioner's claim that his confession was not voluntary, as discussed above in the ineffective assistance claim, on cross-examination Petitioner testified as to the alleged threats made to him by the police. The Court finds that the record reflects sufficient evidence to support the trial court's finding that the confession was freely and voluntarily made, and the ninth claim is denied.

### X

Petitioner maintains that the trial court unconstitutionally limited the mitigating factors the jury was allowed to consider. The trial court rejected defense counsel's request for instructions that Petitioner's participation in the crime was "minor" because he did not actually kill the victim, and that Petitioner had consumed alcohol prior to the crime, thus suggesting impairment. The Court finds that there was ample evidence on the record to show that Petitioner was more than a "minor" player in the crime. Petitioner was actively involved in the armed robbery and kidnapping of the victim, he held the gun on her in the car, and he failed to intervene to prevent the victim's death. As to the claim of impairment, the details of Petitioner's confession regarding the crime and the fact that he specifically stated that he "knew what [he] was doing" at the time of the crime demonstrate that the trial court properly denied the impairment instruction re-

quest. Therefore, Petitioner's tenth claim is denied.

### XI

In his eleventh claim, Petitioner alleges that the trial court erred in allowing the State to offer as an aggravating circumstance that the murder was "heinous, atrocious, and cruel." The Court finds that there was ample record evidence to support such an aggravating circumstance and that this claim is without merit and must be denied.

### XII

Petitioner maintains that his death sentence cannot stand because the State did not prove that he intended to kill the victim. However, Petitioner's involvement in an armed robbery and kidnapping, along with his apparent indifference to the victim's plight, is sufficient to meet the constitutional standards set forth in *Enmund v. Florida*, 458 U.S. 782, 787, 102 S.Ct. 3368, 3371, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Therefore, this claim is denied.

### XIII

Finally, Petitioner alleges that Florida Rule of Criminal Procedure 3.851 violated his due process because his time to file his post-conviction requests for relief was accelerated by thirteen days. This claim is without merit since Petitioner was sentenced in 1986 and thus had notice of all the issues to be raised on appeal at that time. Thus the thirteen day acceleration cannot be viewed as depriving Petitioner of his due process rights, and this claim is denied.

Based on the foregoing, it is

ORDERED

1. Petitioner's motions to supplement and to amend writ of habeas corpus (D–51, D–52) are granted.

2. Petitioner's petition for habeas corpus relief is granted as to Petitioner's claim of ineffective assistance of counsel during the sentencing phase of his trial. Respondent the State of Florida is directed to schedule a new sentencing proceeding at which Petitioner may present evidence to a jury on or before 90 days from the date of this Order. Upon failure of the Respondent to hold a new sentencing hearing within said 90 day period without an order from this Court extending said time for good cause, the sentence of death imposed on the Petitioner will be vacated and the Petitioner sentenced to life imprisonment.

3. In all other respects, Petitioner's petition for habeas corpus relief is denied.

DONE AND ORDERED at Tampa, Florida this 3rd day of August, 1990.

/s/ William J. Castagna
WILLIAM J. CASTAGNA
UNITED STATES DISTRICT JUDGE

Copies to

Counsel of Record

HATCHETT, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's holding that Cave suffered prejudice in the penalty phase of the trial. But, the majority stops short of providing Cave with the full relief to which he is entitled. Cave's counsel also caused him prejudice in the guilt phase of the trial. This record makes clear that Cave's lawyer, throughout this trial, had no understanding of the doctrine of felony murder under Florida law. As the majority correctly points out, Cave's counsel conceded that Cave was guilty of the robbery and argued his guilt to the jury. Through this absolutely incompetent performance, Cave's lawyer convicted him and led him to the electric chair.

It is difficult to understand a justice system, especially in a capital setting, operating under a standard in which prejudice is not conclusively established when the criminal defendant's *court-appointed* lawyer proves the government's case against the defendant beyond a reasonable doubt. The majority's only attempt to explain why Cave's lawyer's incompetence did not constitute prejudice in the guilt phase of the

trial is that Cave had confessed to the robbery. That observation simply highlights the prejudice that Cave suffered. His counsel never attacked the confession. Since Cave was not what his counsel and the majority refer to as "the shooter," without the confession Cave may not have been convicted. If failure to attack the confession in this case is not sufficient to constitute prejudice, then no case will ever come to this court with evidence sufficient to constitute prejudice. Cave, in effect, had no lawyer at all. In fact, what he got was worse. Cave's lawyer was his most effective prosecutor.

If ignorance of the law as to the basic elements of the offense may constitute prejudice in the penalty phase of a capital case, then it is inconceivable that the same ignorance would not constitute prejudice in the guilt phase.

I would reverse the conviction and order a new trial.